**Eddie BRUNSON, Petitioner-Appellant,**

v.

**Gerald HIGGINS, Superintendent, Respondent-Appellee.**

No. 82–1961.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1982.

Decided June 9, 1983.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, Mo., for respondent-appellee.

George M. Bock, Slagle & Bernard, P.C., Kansas City, Mo., for petitioner-appellant.

Before ROSS, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Eddie Brunson appeals the district court's [1], 542 F.Supp. 216, denial of his petition for postconviction relief pursuant to 28 U.S.C. § 2254. Brunson contends that his trial counsel was ineffective in failing to make a motion to disqualify the jury panel and in improperly putting into evidence Brunson's prior convictions. Brunson further argues that he did not have the opportunity for full and fair litigation of his Fourth Amendment claims in state court. We affirm.

Brunson was convicted of burglary in the second degree and stealing in July 1976. Brunson was tried in Jackson County, Missouri, and was represented at trial by an attorney from the Jackson County Public Defender's office. The Missouri Court of Appeals subsequently affirmed his conviction. *State v. Brunson*, 559 S.W.2d 60 (Mo. App.1977). Brunson then sought, and was denied, state postconviction relief under Mo. R.Civ.P. 27.26.[2] Brunson subsequently sought federal postconviction relief pursuant to 28 U.S.C. § 2254. The district court found no basis for relief and denied Brunson's petition without a hearing.

## I. *Ineffective Assistance of Counsel*

### A. *Failure to Challenge Jury Panel*

■ Brunson first contends that his attorney was ineffective in failing to move to strike the jury panel at his trial on the basis that it did not represent a fair cross section of the community due to the exclusion of women from jury panels in Jackson County. At the time Brunson was tried Missouri law provided that although women were eligible to serve on juries, they would be exempted from jury service on request. § 494.031, Mo.Rev.Stat. (Supp.1975).

On January 21, 1975, approximately a year and a half before Brunson's trial, the United States Supreme Court had held the Louisiana jury selection system unconstitutional because it resulted in the systematic exclusion of women from juries. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Under the Louisiana scheme women were automatically excluded from jury service unless they affirmatively chose to serve. On September 27, 1977, fourteen months after Brunson was tried, the Missouri Supreme Court upheld the state's jury selection system in the face of the same type of attack made in *Taylor*. *State v. Duren*, 556 S.W.2d 11 (Mo. en banc 1977). The Missouri Supreme Court distinguished *Taylor* on the basis that *Taylor* had involved a system under which women were automatically excluded from jury service unless they chose to serve, whereas under the Missouri scheme women were automatically eligible unless they chose to be exempt. The court also concluded that the Missouri system resulted in a greater percentage of women serving on juries than had the Louisiana system. On January 9, 1979, approximately 2½ years after Brunson's trial, the Missouri Supreme Court's decision in *State v. Duren* was reversed in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), in which the United States Supreme Court held the Missouri jury selection system unconstitutional because, like the Louisiana scheme, it was found to result in the systematic exclusion of women from juries.

Brunson contends that after *Taylor v. Louisiana* it was clear that the Missouri jury selection system was invalid, and that it constituted ineffective assistance of counsel not to challenge the composition of the jury panel at Brunson's trial.

The district court, in a footnote to its original order of March 24, 1982, denying Brunson's § 2255 petition, specifically con-

---

1. The Honorable John W. Oliver, Senior United States District Judge for the Western District of Missouri.

2. The state contends that Brunson has failed to exhaust his state remedies as to all points

raised on appeal. The state raised the exhaustion question in a footnote to its argument without briefing the issue. From our review of the record it appears that Johnson has exhausted his state remedies.

sidered the failure to raise the *Duren* motion. The court later vacated this order *sua sponte* for further consideration of the *Duren* question and entered a final ruling on July 6, 1982. In both orders the district court reviewed the following findings of the Missouri Circuit Court which had considered Brunson's 27.26 petition:

> No evidence was presented at the trial or at this hearing concerning these issues. Defense counsel testified that he had only been a member of the Jackson County Public Defender's office for about a month when he tried this case. He stated he believed that the statistical evidence for a *Duren* motion was being compiled by the Public Defender's office at that time but that it apparently was not complete as it had not been presented in any case to date to his knowledge.

In the March 24 order the district court had considered the findings of the Circuit Court under 28 U.S.C. § 2254(d), *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), and presumed the findings to be correct because none of the eight factors enumerated in § 2254(d) were present. In the July 6 order the court discussed at length *Benson v. State,* 611 S.W.2d 538 (Mo. App.1980), in which the Missouri Court of Appeals had dealt with a fact situation very similar to this case. The Missouri Court of Appeals concluded in *Benson* that, at least as to cases tried between *Taylor v. Louisiana* and *State v. Duren,* the viability in Jackson County of a jury panel challenge based on the exclusion of women remained speculative, and stated that as a general rule counsel would not be deemed ineffective for failing to make such challenges in cases tried before *State v. Duren.*[3] The district court concluded that the general rule in *Benson* was "in accord with the controlling principles of law of this Circuit." The court found no reason not to apply the *Benson* rule, and summarized, "We find and conclude that under the circumstances of this case, counsel was not ineffective for failing to raise a *Duren* motion at the time of petitioner's trial. Our memorandum and order of March 24, 1982 should therefore be reinstated." The findings of the district court on this issue were not clearly erroneous, and there is no error of law in its conclusions.

 In order to establish ineffective assistance of counsel Brunson must establish (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and (2) that he was prejudiced by his attorney's ineffectiveness. *Harris v. Housewright,* 697 F.2d 202 (8th Cir.1982); *Eldridge v. Atkins,* 665 F.2d 228 (8th Cir.1981), *cert. denied* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982). Counsel need not perform perfectly, and will not be held ineffective for failure to raise every tangential issue which might have a bearing on his client's case. "Counsel does not fail to render effective service if there is little or no likelihood that a reasonable lawyer under similar circumstances would consider the alleged defense reasonably essential to the case.... counsel's duty is to assert all apparent 'substantial defenses' available." *Reynolds v. Mabry,* 574 F.2d 978, 981 (8th Cir.1978).

 The failure to anticipate a change in the law will not generally constitute ineffective assistance of counsel. *United States v. Hach,* 615 F.2d 1203 (8th Cir.), *cert. denied* 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Although in *Lee v. Missouri,* 439 U.S. 461, 462, 99 S.Ct. 710, 711, 58 L.Ed.2d 736, 739 (1979), a companion case to *Duren v. Missouri,* the United States Supreme Court stated that *Duren v. Missouri* did not "announce any 'new standards' of constitutional law" not already evident from *Taylor,* it is clear that before *Duren v. Missouri* many attorneys believed the Missouri jury selection system was valid under *Taylor,* as evidenced by the Missouri Su-

---

**3.** The Missouri Court of Appeals later reached essentially the same conclusion in regard to cases tried after *State v. Duren* but before *Du-* *ren v. Missouri.* See discussion of *Williamson v. State,* 628 S.W.2d 895 (Mo.App.1981), *infra* at 1358.

preme Court's decision upholding the system in 1977.

The fact that those who believed the Missouri system to be constitutional were later proved wrong does not establish that they were incompetent. In *Benson*, the Missouri Court of Appeals dealt with an attorney's failure to make a jury panel challenge in a trial which, like Brunson's, occurred between the *Taylor v. Louisiana* and *State v. Duren* holdings. The court stated:

A movant asserting a *Duren* type claim, tried during the period involved, bears the burden of showing that reasonably competent lawyers rendering similar services under existing circumstances would have filed a motion to quash the jury panel and offered proof in support of it.

Hindsight based on the holding in *Duren v. Missouri* has no place in that evaluation. The issue must be considered in the light of whether a reasonably competent lawyer would have considered such a motion a substantial defense reasonably essential to the case at the time of trial. The determination of that question inevitably involves a professional judgment on the reach and scope of the holding in *Taylor v. Louisiana*. In the light of the [state trial court holdings that the Missouri jury selection system was valid] and the subsequent affirmance of those trial court holdings in the Supreme Court of Missouri, a determination that a reasonably competent lawyer should have predicted the holding in *Duren v. Missouri* is not possible.

611 S.W.2d at 544–45.

We agree with the district court that the *Benson* reasoning is persuasive.

Brunson argues that the district court based its decision in part on the *Benson* court's finding that in the summer of 1976 jury selection data was not available to the Public Defender's Office in anything other than uncompiled "raw" form which would

have been "virtually impossible" to present to the trial court. 611 S.W.2d at 543. Brunson contends that the district court therefore violated this court's mandate in *Hill v. Wyrick*, 570 F.2d 748 (8th Cir.), *cert. denied* 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978), that a district court not rely on findings in state court proceedings without examination of the underlying transcript. We disagree with Brunson's characterization of the district court's use of *Benson*. The district court was dealing with *Benson* as legal authority. The district court referred to *Benson's* statement that the factual compilation of statistical evidence "was not available until November, 1976" simply as an introduction to its lengthy quotation of legal principles from *Benson*. In addition, *Hill v. Wyrick* was dealing with the necessity of examining the state hearing transcript on the very habeas petition which was before the district court. *Hill* simply has no application to the situation before us. The district court had referred to the findings of the Circuit Court with respect to the *Duren* issue and had properly presumed them correct. These were the factual determinations upon which the district court was basing its conclusions of law. The facts upon which *Benson* was based were simply consistent with these facts.

Brunson contends that if the district court had held a hearing on his § 2254 petition, he would have proven that the factual findings of *Benson* were erroneous. He contends that he would have presented substantial evidence that other attorneys were making *Duren*-type challenges at the time Brunson was tried, and that the Jackson County Public Defender's office itself was in the forefront in making these challenges. He also contends that he would have proven that data demonstrating the underrepresentation of women on Jackson County juries sufficient to sustain a jury panel challenge was available to Brunson's attorney at the time of trial.[4]

---

4. Brunson had the opportunity to develop this evidence at his 27.26 hearing but failed to do so. The only evidence on the *Duren* issue presented at the 27.26 hearing was the testimony of Brunson's trial counsel, set out *infra* at 1358–1359. Even if we were to conclude that

We conclude that such evidence, even if accepted, would not have established that Brunson's trial counsel was ineffective. To establish ineffective assistance of counsel a petitioner must show that his attorney failed to exercise the customary skill and diligence of a reasonably competent attorney. In this case, however, the viability of the defense which counsel failed to assert was not established at the time the case was tried. Regardless of whether other attorneys may have been filing challenges to jury panels, and regardless of the information available to Brunson's attorney on the composition of jury panels in Jackson County, we must conclude that he cannot be found to have fallen below the standard of customary skill and diligence for failure to present what was at the time a speculative, rather than an established, defense.

The Missouri Court of Appeals reached this same conclusion in *Williamson v. State*, 628 S.W.2d 895 (Mo.App.1981). The petitioner in *Williamson* had been tried in Jackson County after the Missouri Supreme Court's decision in *State v. Duren*, in which the Supreme Court had set out in detail much of the data on jury panel composition in Jackson County. This information clearly was available to the attorney in *Williamson*, and the court additionally found that the attorney was "aware that the public defender's office was routinely filing motions to quash jury panels in Jackson County." *Id.* at 897. Nevertheless, the Missouri Court of Appeals declined to find ineffective assistance of counsel because the defense itself was speculative at the time.

Brunson also argues that even if the data on jury selection had been in "raw" form at the time of Brunson's trial, a motion to quash nevertheless could have been supported by a stipulation. Brunson has cited only one case in which such a stipulation was filed before 1977: *State v. Minor*, 556 S.W.2d 35 (Mo. en banc 1977), a murder case tried in December 1975. *Minor* was

tried only three weeks after *State v. Lee*, 556 S.W.2d 25 (Mo. en banc 1977), *vacated sub. nom. Lee v. Missouri*, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979), another murder case in which a *Duren*-type challenge was made and in which numerical data on the number of women on Jackson County juries had been presented. In his testimony at the 27.26 hearing, Brunson's trial counsel stated that he believed "it would serve the defendant in a burglary case no real purpose" to file a jury panel challenge because of the "long appellate process" necessary on such an issue. Thus, the decision not to file a motion to quash the jury panel was in part a matter of judgment of counsel. This reasoning, together with the fact that the *Minor* trial followed *Lee* by only three weeks, explains why Minor's counsel filed a stipulation and Brunson's did not. The other cases cited by Brunson in which stipulations were filed were all tried in 1977 and involved stipulations as to the 1976 and 1977 jury wheels. *See: State v. Buford*, 582 S.W.2d 298 (Mo. App.1979); *State v. Coleman*, 582 S.W.2d 335 (Mo.App.1979); *State v. Tate*, 582 S.W.2d 329 (Mo.App.1979).

Brunson argues that his counsel's testimony as to why he did not file a motion objecting to the jury panel was speculative. When asked if he recalled why the motion was not made, counsel answered:

Not specifically. Based on the timing of this case, I believe it would have been my judgment that the evidence was not that well prepared in our office yet. Although later we did file those motions as a matter of course.

When asked if the statistical data to support the motion was available at the time of Brunson's trial, counsel answered:

Every year we had to redevelop the data base for the jury—whole—in use that particular year. And I can't at this particular point tell you what the status of it was for that year at that time.

---

the evidence Brunson wishes to introduce on this issue were relevant, we have doubts as to whether the district court could have considered it in light of Brunson's failure to present it at his 27.26 hearing. "Such a disre-

gard of state procedures to correct constitutional defects in state criminal trials is, in some instances, barred by the doctrine of exhaustion of state remedies." *Ashby v. Wyrick*, 693 F.2d 789, 792, n. 3 (8th Cir.1982).

This testimony is not a model of specificity and is hedged. However, it supports the Circuit Court's findings that the statistical evidence for a *Duren* type challenge was being compiled but was not yet complete. The district court presumed this finding to be correct, and we can discern no error in this respect.

Brunson argues that the Missouri courts have been inconsistent in their rulings on the effects of the *Duren v. Missouri* holding. The Missouri Court of Appeals has held that *Duren* will affect cases differently depending on when they were tried. *See, e.g.: State v. Williams,* 595 S.W.2d 378 (Mo. App.1980) (court invoked plain error rule to grant new trial where no jury panel challenge had been made in case tried after *State v. Duren* ); *State v. Mountjoy,* 585 S.W.2d 98 (Mo.App.1979) (court refused to grant new trial under plain error rule where no jury panel challenge had been made in case tried before *State v. Duren* ). The fact that the Missouri Court of Appeals has not found counsel ineffective for failure to make a jury panel challenge before the Supreme Court's decision in *Duren v. Missouri* is not inconsistent with its other rulings, however. The Missouri courts have simply recognized that the standard of skill required of attorneys does not demand that they correctly anticipate future changes in the law.

We conclude that the district court did not err in failing to hold a hearing on this issue, and we affirm the district court's ruling that the failure of Brunson's attorney to move to quash the jury panel at trial did not constitute ineffective assistance of counsel.

**B.** *Evidence of Brunson's Prior Convictions.*

Brunson next contends that his counsel was ineffective in eliciting from him at trial a statement that he had three prior burglary convictions. It is undisputed that at the time he was tried Brunson in fact had two

prior convictions for burglary and one for stealing. At his 27.26 hearing Brunson also testified that he had a prior conviction for receiving stolen property. The stealing conviction and one of the burglary convictions were on appeal at the time Brunson was tried in July 1976.[5]

■ At the 27.26 hearing trial counsel testified, and the Circuit Court found, that counsel wished to bring out Brunson's prior convictions on direct in order to take the "sting" out of the prosecution's use of the convictions in impeaching defendant. Under Missouri law, however, convictions which are on appeal cannot be used for impeachment purposes. *State v. Blevins,* 425 S.W.2d 155 (Mo.1968). Brunson argues that since the prosecution could not have impeached him with the two prior convictions which were still on appeal, his attorney acted improperly in bringing out these convictions.

In denying his 27.26 motion the state court found that bringing out the prior convictions was a matter of trial strategy, and concluded that Brunson had not been prejudiced by the testimony about his prior convictions. "A determination of a factual issue made by a state court of competent jurisdiction is presumed to be correct unless the petitioner shows it to be erroneous." *Smith v. Lockhart,* 697 F.2d 267, 268 (8th Cir.1983). *See also: Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). As we have stated before, "[t]he introduction by a witness himself, on his direct, of a prior conviction is a common trial tactic, recommended by textwriters on trial practice." *United States v. Bad Cob,* 560 F.2d 877, 883 (8th Cir.1977). Although Brunson's trial counsel may have erred in eliciting testimony of convictions on appeal which could not have been used to impeach him, the state court's finding that Brunson was not prejudiced by this mistake is fairly supported by the record.

---

**5.** These convictions have since been affirmed. *State v. Brunson,* 555 S.W.2d 359 (Mo.App. 1977).

The evidence against Brunson at trial was strong. Brunson was arrested within a block of the house he was charged with burglarizing. There were signs that the house had been forcibly entered. It was apparent that items in the house had been moved, including a television set which was found sitting in the doorway. Shoeprints leading to the rear of the house were examined and found to be similar in size and shape to the soles of the shoes Brunson was wearing. In searching Brunson after the arrest police discovered a gold wedding band which the owner of the house identified as belonging to her.

By contrast, the trial error which Brunson complains of affected only his credibility and "did not pertain to [his] guilt or innocence." *Tyler v. Wyrick,* 635 F.2d 752, 755 (8th Cir.1980), *cert. denied* 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981).

Brunson concedes that the prosecutor could properly have questioned him on at least one prior burglary conviction which had been affirmed by the Missouri Court of Appeals in 1973 and which was therefore final for impeachment purposes. The Circuit Court's opinion denying Brunson's 27.26 motion reveals that it believed Brunson could also properly have been impeached on his 1969 conviction for receiving stolen property. Brunson testified at his 27.26 hearing that he had a 1969 conviction for receiving stolen property, that this 1969 conviction was a "final" conviction at the time of his 1976 trial in the sense that no appeals from it were then pending, and that he had been incarcerated two years for this conviction. Brunson now argues that this conviction could not have been used to impeach him because he was a juvenile at the · time the conviction was obtained. Brunson made no such objection to the availability for impeachment purposes of the 1969 conviction at his 27.26 hearing or before the district court. On the contrary, his testimony that the conviction was final clearly implied that it *could* be used to

impeach him at trial. On the basis of Brunson's own testimony, the state court's finding that he could have been impeached on two prior convictions is amply supported by the record.

■ Once a defendant's credibility has been tarnished by two prior convictions, it is pure speculation to assume that evidence of one or two additional convictions will prejudice his case.[6] The state court found no prejudice and we must presume this finding to be correct. We are unable and unwilling to split the hairs of prejudice so finely as to conclude that the state court's finding on this issue is erroneous.

## II. *Fourth Amendment Issues*

■ Brunson finally contends that the wedding band found on his person should have been suppressed because it was discovered during an illegal search. A federal court may not grant habeas corpus relief on the basis that illegally seized evidence was used at Brunson's trial unless it is found that the state failed to provide Brunson with the opportunity for full and fair litigation of his Fourth Amendment claim. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Brunson argues that he was denied the opportunity to fully and fairly litigate the suppression issue because the trial court failed to state its findings of fact and conclusions of law in denying his suppression motion and because the Fourth Amendment issue was not mentioned in the order denying his 27.26 motion.

This claim is without merit. Our review of the record reveals that before trial Brunson's attorney moved to suppress the wedding band and a hearing was held on the motion. At the hearing three witnesses testified, including the police officer who had searched Brunson, and the facts surrounding Brunson's arrest and search were fully developed. Both Brunson's attorney

---

**6.** We reject Brunson's argument based on the nature of his prior convictions. Brunson was on trial for both burglary and stealing. Under the circumstances, an admission of any combination of Brunson's prior burglary, stealing or receipt of stolen property convictions would have been equally destructive of his credibility.

and the prosecutor made oral arguments on the motion. The judge interrupted the prosecutor's argument to state the facts which the judge believed gave rise to probable cause to arrest Brunson [7] and indicated that he thought the search of Brunson was proper since it was incidental to a lawful arrest. At the close of the prosecutor's argument the trial judge formally denied Brunson's motion to suppress. Brunson renewed his Fourth Amendment challenge during trial, and it was again overruled.

Brunson did not raise the Fourth Amendment issue on direct appeal, and the Missouri Court of Appeals made no reference to it in affirming his conviction. Brunson's failure to raise the Fourth Amendment issue on appeal cannot prevent the application of the *Stone v. Powell* doctrine since "[i]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that bars federal habeas corpus consideration of claims under *Stone*." *Lenza v. Wyrick*, 665 F.2d 804, 808 (8th Cir.1981). Brunson also failed to raise the Fourth Amendment issue in his 27.26 motion.[8] Despite his failure to include the issue in his motion the Circuit Court allowed Brunson to testify on the Fourth Amendment question at his 27.26 hearing. We need not speculate on the reasons for the Circuit Court's failure to discuss the Fourth Amendment question in denying Brunson's 27.26 motion, but the significant fact is that he was not denied the opportunity to litigate the issue. *Id.*

We conclude that Brunson was given every opportunity to fully and fairly litigate his Fourth Amendment challenge, and that federal habeas corpus relief therefore cannot be granted on the Fourth Amendment basis. The district court did not err in denying this claim without a hearing.

Affirmed.[9]

---

7. The trial judge indicated that he believed the officer who arrested Brunson had done so on the basis of information provided by a police helicopter and by an eyewitness who saw defendant near the scene of the burglary.

8. Brunson had originally filed a *pro se* 27.26 motion which included the Fourth Amendment issue. Brunson concedes that the issue was later deleted in an amended 27.26 motion, filed by Brunson's appointed counsel, which purported to set forth "all the grounds known to the Movant for vacating, setting aside or correcting his conviction and sentence."

9. The court expresses its appreciation to appointed counsel for his capable and vigorous representation of petitioner.