**REUBEN DOWLING, Petitioner**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Respondent**

Civ. No. 206/2001

Territorial Court for the Virgin Islands

Division of St. Croix, at Kingshill

May 14, 2002

REUBEN DOWLING, Golden Grove Adult Correctional Facility, Rural Route No. 1, Kingshill, St. Croix, V.I., *Pro se*

RICHARD SCHRADER, JR., ESQ., Assistant Attorney General, Department of Justice, Christiansted, St. Croix, *Attorney for Defendant*

CABRET, *Presiding Judge*

## MEMORANDUM OPINION

(May 14, 2002)

BEFORE THE COURT is Reuben Dowling's ("Dowling" or "Petitioner") Petition for Writ of Habeas Corpus, the Government of the Virgin Islands' ("Respondent" or "Government") Motion to Dismiss, and the Petitioner's opposition. The Court heard arguments on the Government's motion on October 22, 2001 and, after permitting both parties to file supplemental briefs, took the matter under advisement.

## I. STATEMENT OF FACTS

The facts and procedural posture of this case, as adopted from the United States Supreme Court's opinion in *Dowling v. United States*, 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990) and the trial record, are as follows. On July 8, 1985, police patrolling the downtown Frederiksted area spotted a white Volkswagen at the side of the road, in the vicinity of the First Pennsylvania Bank. Two men were seated in the car—the driver and another, identified as Delroy Christian, in the back seat. The passenger door of the vehicle stood open. Police approached the vehicle and told the occupants to close the door. Police then remained

in the area, keeping the vehicle in view until it finally drove off. Police followed the vehicle for a short distance before turning around to return to patrol. However, as they were returning to their patrol, they received notice that the First Pennsylvania Bank had been robbed. The robbery was committed by a man wearing a ski mask and toting a small handgun. After committing the robbery, the masked robber ran from the bank and, after scurrying around on the street momentarily, commandeered a taxi van. As he drove off, the robber removed the ski mask, in view of witnesses at the bank, who later identified Petitioner as the perpetrator of the crime.

Approximately two weeks after the bank robbery, there was another alleged robbery at the home of Vena Henry ("Henry") in Estate Strawberry. Henry reported that a masked man with a small gun had entered her home, accompanied by Delroy Christian, to commit a robbery. However, Henry told police that, during a struggle, she unmasked the man, whom she identified as the petitioner. After a jury trial, and before the trial for the bank robbery, Dowling was acquitted of the Henry robbery.

At his trial for the bank robbery, however, the Court permitted Henry to testify regarding the incident at her home, specifically regarding the description of the masked man, the wearing of a ski mask, the handgun he carried, and the presence of Delroy Christian. After a third trial, Petitioner was found guilty and sentenced to 70 years in prison.

Dowling appealed to the Third Circuit, arguing Henry's testimony regarding a crime for which he had been acquitted violated constitutional prohibitions against double jeopardy. On appeal, the Third Circuit held it was error to admit Henry's testimony of other crimes, but held that the error was harmless and did not prejudice Dowling, because of the weight of evidence against him. Dowling then filed an appeal in the United States Supreme Court, arguing the appellate court erred in finding the defendant was not prejudiced by Henry's testimony. The Supreme Court upheld the District Court's admission of the testimony. Dowling now files the instant Petition for Writ of Habeas Corpus, asserting various violations of his constitutional right to a fair trial.

## II. DISCUSSION

██ Title 5, Section 1301, *et seq.*, governs habeas corpus petitions brought in this Court. *See Parrott v. Government of the V.I.*, 230 F.3d

615, 619-21 (3d Cir. 2000); *see also Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000). That statute provides:

> Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatsoever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.

Virgin Islands CODE ANN. tit. 5, § 1301 (1997). Habeas corpus is warranted only in limited cases where violations of constitutional principles are implicated; it is not a substitute for a direct appeal. *See In re Piazza*, 7 Ohio St. 2d 102, 36 Ohio Op. 2d 84, 218 N.E.2d 459, 460 (Ohio 1966); *Barefoot v. Estelle*, 463 U.S. 880, 887, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983) (noting that habeas corpus proceedings are limited, and are not to be used as forums in which to relitigate trials); *Commonwealth v. Wolfe*, 413 Pa. Super. 583, 605 A.2d 1271, 1273 (E.D.Pa. 1992). A petitioner bears the burden of proving the facts supporting the petition or establishing grounds entitling him to relief. *See Hickock v. Hand*, 190 Kan. 224, 373 P.2d 206, 214 (Kan. 1962); *see also Goins v. Brierly*, 464 F.2d 947, 949 & n.4 (3d Cir. 1972).

As bases for his petition, Dowling raises several arguments: 1) that the trial court improperly admitted testimony of a prior crime, of which he was acquitted; 2) his trial counsel's failure to cross-examine the witness who testified regarding the prior crime amounted to ineffective assistance of counsel; and 3) the trial court should not have permitted a police officer to testify, because he was an incredible witness. The Government now seeks to dismiss the petition, on grounds habeas corpus relief is not appropriate under these circumstances and the petition improperly seeks to revisit issues already decided on appeal. The Court agrees and will dismiss the petition.

## 1. Vena Henry's Testimony

In his petition, Dowling relies primarily on his contention that his bank robbery trial was tainted by what he terms the improperly admitted evidence of other crimes testimony and on an FBI report, which he regards as exculpatory evidence in the Henry robbery. Petitioner first contends he was denied a fair trial, because the trial court permitted Vena Henry to testify that Dowling had entered her home while wearing a ski mask and toting a small handgun, along with another individual, Delroy Christian, two weeks after the bank robbery. Dowling argues Henry's

testimony of the subsequent robbery permitted the jury to improperly infer that he was the masked gunman in the Henry home, despite his acquittal of that crime, violating the Constitution's prohibitions against double jeopardy.

At trial, the court noted the similarities of the small handgun and ski mask worn by one of the alleged perpetrators in the Henry robbery and the bank robbery, and the relationship established between Dowling and Christian in both crimes. *See* Trial Tr. at 18-25. The court, therefore, admitted the testimony under Federal Rule of Evidence 404(b), on grounds the evidence was relevant to the issue of identification. *See id.* The court additionally reasoned that Henry's testimony did not put Dowling in double jeopardy because Dowling never disputed that he was in Henry's home, but argued only that he did not commit the robbery. *Id.* Therefore, the Court concluded that the issue of identification was not an ultimate fact[1] resolved by the jury's verdict of acquittal in that case and the Government, therefore, was not barred from presenting the identification evidence at the bank robbery trial. *Id.*

The issue of the propriety of admitting Henry's testimony—and the specific challenges now raised in the instant motion—have already been put to the United States Supreme Court and resolved against the petitioner. In a lengthy opinion, the Supreme Court upheld the admission of Henry's testimony as proper and not violative of constitutional double jeopardy or collateral estoppel. *See generally, Dowling v. United States,* 493 U.S. 342 (1990). The Supreme Court reasoned, as the District Court had, that the Henry jury never resolved the issue of identity in its verdict, because Dowling's presence in the home apparently was not disputed. *Id.* at 348 (relying on statements made at sidebar by the trial judge and counsel regarding the Henry trial). Thus, the Court held, the jury could have reasonably concluded that, although Dowling had entered the home, he did not commit the crimes charged. *Id.*

The United States Supreme Court having resolved the constitutional and evidentiary challenges against the Petitioner in this instance, this Court is bound by that decision and will not—indeed, cannot—revisit the identical issues.

---

[1] *See Ashe v. Sevenson,* 397 U.S. 436, 90 S.Ct. 1189 (1970) (explaining the Ultimate Issue of Fact Doctrine).

## 2. FBI Hair Analysis

The Court turns next to Dowling's central argument that a hair analysis, done by the FBI and which he recently obtained, proves conclusively that he was not the wearer of a ski mask collected from one of the robberies.

Dowling appears to be laboring under the misapprehension that he is now required to prove that he was not the masked man who entered the Henry home and that a recently obtained FBI hair analysis is conclusive proof of his innocence of that crime, compelling habeas corpus relief. *See* Pet. for Writ, at 4-6. The defendant's reasoning is flawed in several respects.

First, Dowling misconstrues the Supreme Court's ruling. That Court held that Dowling bore the burden to prove that his identity was an ultimate issue at the Henry trial and was, therefore, actually decided by the jury in its general verdict. *Id.* at 350-52. The Court concluded that Dowling had failed to meet this burden to show that the issue of identity formed the basis of his acquittal. *Id.* Contrary to Dowling's assertions, however, the Supreme Court did not hold that Dowling must now, following his acquittal, embark on a mission to prove his innocence in the Henry robbery. Rather, the Court's holding went only to whether the jury, in acquitting him of that crime, resolved the issue of identity in his favor, thereby precluding that issue from being relitigated in another proceeding. *Id.*

Moreover, Dowling touts a recently obtained FBI hair analysis as new proof of his innocence in the Henry robbery, compelling habeas corpus relief. *See* Pet. for Writ, at 4-6. This characterization of the FBI hair analysis as new evidence of an exculpatory nature is inaccurate.

First, as Dowling notes, the FBI analysis, completed on August 26, 1985, was available at the time of his 1987 trial and, indeed, had been done at the request of police investigators. Therefore, the report is not newly discovered evidence, notwithstanding Dowling's inability to obtain a personal copy of the report earlier. Moreover, it is unclear from the record to which crime the report relates. While the record makes reference to hair and blood analysis of a ski mask found in the Henry home, the FBI's report notes that the samples were collected "in connection with the robbery of the First Pennsylvania Bank." *See* Pet. Exh. B. Nonetheless, the report does not provide conclusive evidence

261

that Dowling had not worn the ski mask or that he was eliminated as the perpetrator of either crime.

Importantly, the report notes only that Dowling was not the source of the head hairs recovered from the ski mask. However, the report also cautions that, often, hairs on ski masks could not be associated with an alleged wearer and offers several explanations for this:

> 1) The alleged wearer did not come in contact directly or indirectly with the ski mask;
>
> 2) The alleged wearer did come in contact directly or indirectly with the ski mask but left no hairs;
>
> 3) The alleged wearer did come in contact directly or indirectly with the ski mask but let no hairs of significant comparison value; or
>
> 4) Hairs of significant value were transferred but were subsequently lost during removal of the mask or handling.

*Id.* The FBI report, therefore, cannot be said to be exculpatory.

### 3. Ineffective Assistance of Counsel Claim

Dowling next contends his trial counsel's failure to cross-examine Henry regarding the robbery in her home amounted to a denial of his Sixth Amendment right to effective assistance of counsel.

In reviewing ineffective assistance of counsel claims, an attorney's representation is presumed to be reasonable. *See Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2065-69, 80 L. Ed. 2d 674 (1984); *see also Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). That presumption is overcome only by a showing that the attorney's representation was so far below professional standards as to render the defendant without representation. *See Strickland*, 466 U.S. at 687-96. To obtain habeas corpus relief on grounds counsel's representation was ineffective, Petitioner must additionally establish that he was prejudiced by such representation or, in other words, that the result of the proceedings would have likely been different, but for the attorney's professional errors. *See Meyers v. Gillis*, 142 F.3d 664 (3d Cir. 1998) (citing *Strickland*, 466 U.S. at 687).

Here, Petitioner contends his counsel permitted damaging testimony of other acts to go unchallenged. Petitioner correctly notes that his counsel opted not to cross-examine Henry. However, the record also

reflects his attorney's vigorous objection to the admission of Henry's testimony. Moreover, whether to conduct cross-examination is an issue generally left to the professional judgment of counsel, who is most familiar with the facts of the case and his trial strategy. *See Government of the V.I. v. Weatherwax*, 33 V.I. 399, 413, 77 F.3d 1425, 1431, 1433-34 (3d Cir. 1996) (citing ABA Standards § 4-5.2(b)).

Importantly, Petitioner notes that his counsel declined to cross-examine Henry, after she was permitted to testify over counsel's objections, because of the attorney's view that such testimony was clearly prohibited under existing law, and specifically by a "keller case" [sic]. This is an apparent reference to *United States v. Keller*, 624 F.2d 1154 (3d Cir. 1980), in which the Third Circuit held that the Government is collaterally estopped from offering evidence of other crimes in a subsequent proceeding once a defendant has been acquitted of those crimes. Indeed, that case reflected the law of this circuit at the time of Dowling's trial, as the appellate Court noted in finding admission of the evidence improper in this case. *See United States v. Dowling*, 855 F.2d 114 (3d Cir. 1988) (relying on *Keller*); *But see, Dowling v. United States*, 493 U.S. 342 (1990) (holding there is no *per se* bar to such evidence in subsequent proceedings; rather, it must be shown that the evidence sought to be precluded surrounds an ultimate issue determined in the previous proceeding).

█ Although Dowling's defense counsel preserved that issue for appeal, she could not have foretold that the law, as announced by *Keller* in 1980, would subsequently be limited by the Supreme Court's decision in this case. *See Sistrunk*, 96 F.3d at 670-71 (noting that, "in making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law") (quoting *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989) (citing *Morse v. Texas*, 691 F.2d 770, 772 n.2 (5th Cir. 1982)), *cert. denied*, 500 U.S. 954, 111 S. Ct. 2262, 114 L. Ed. 2d 714 (1991); *Brunson v. Higgins*, 708 F.2d 1353 (8th Cir. 1983); *Honeycutt v. Mahoney*, 698 F.2d 213, 216-17 (4th Cir. 1983) (holding that failure to anticipate change in law "foreshadowed by" Supreme Court and federal appellate court precedent not ineffective assistance)); *see also Weatherwax*, 77 F.3d at 1434 (court will not second-guess counsel's tactical decisions) (citations omitted). Defense counsel's decision not to cross-examine Henry was a matter of trial strategy and did not rise to the level of ineffective assistance of

263

counsel. Moreover, defense counsel's belief that the trial court's ruling was inapposite to the law, as it stood at the time, was not unreasonable under the circumstances.

Even if Petitioner could establish the first prong of the *Strickland* standard, his ineffective assistance of counsel claim must fail, because he has not established that he was prejudiced by his attorney's decision to forego cross-examination of Henry—as required under *Strickland*—in light of all of the other evidence supporting the jury's finding of guilt.

### 4. Police Misconduct and Credibility

■ Dowling additionally argues that police misconduct in conducting a search of his home militates in favor of granting his petition for habeas corpus. However, this argument has no merit, because the trial judge reviewed this challenge and suppressed the evidence recovered in that search.

■ The Court will also dismiss, as meritless, Dowling's additional argument that the police officer who conducted that search was not credible, as a result of the tainted search, and should not have been allowed to testify. A witnesses' credibility may be properly delved into by way of impeachment on cross-examination. However, any final determination regarding the believability of witnesses at trial and the weight to be accorded such testimony, is within the sole province of the jury. *See, e.g. Government of the V.I. v. Robinson*, 30 V.I. 428, 29 F.3d 878 (3d Cir. 1994); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 700 (3d Cir. 1995) ("Evaluation of witness credibility is the exclusive function of the jury ...").

### III. CONCLUSION

Petitioner's challenge to the admission of Henry's testimony at his bank robbery trial is not properly before this Court, because the U.S. Supreme Court has already spoken on that issue. Additionally, the record in this case and the law of this circuit at the time of Petitioner's trial refute, rather than support, Petitioner's contentions that his Sixth Amendment right to counsel was impaired by his attorney's representation and the trial strategy adopted. Petitioner's additional ground for challenging his conviction and imprisonment, based on police misconduct, also does not warrant habeas corpus relief, because the evidence seized as a result of the challenged conduct was suppressed at trial. Finally, a motion for

writ of habeas corpus is not the proper forum for challenging the credibility of witnesses. Therefore, having reviewed the arguments presented on the instant motions, the record and the procedural posture of this case, this Court must grant the Defendant's Motion to Dismiss the Petition for Writ of Habeas Corpus. An appropriate order follows.