{¶ 1} Defendant-appellant Nathanial Blacker appeals from his conviction and sentence in the Guernsey County Court of Common Pleas on one count of aggravated robbery in violation of R.C.2911.01 (A) (1), a felony of the first degree. Plaintiff-appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} On December 12, 2004, Appellant was indicted by the Guernsey County Grand Jury on two counts of Aggravated Robbery, in violation of Revised Code Section 2911.01(A)(1). Count One of the Indictment concerned the Secrest Carryout. Count Two of the indictment concerned Plus One Pizza.
 {¶ 3} On February 9, 2005, appellant filed a Suggestion of Incompetence. An evidentiary hearing was held on appellant's Suggestion of Incompetence. Appellant was ordered to be evaluated for competency to stand trial. On March 18, 2005, a hearing was held upon the competency report. Appellant was found to be incompetent to stand trial, but he could be restored to competency. At that hearing, the state's motion for a second competency evaluation was granted. Appellant was ordered to undergo treatment to restore competency on May 11, 2005. On August 9, 2005, the court found appellant competent to stand trial, based on a report that appellant's competency had been restored.
 {¶ 4} On November 18, 2004, a man wearing a black shirt and black hat and armed with a butcher knife robbed the Secrest Carryout in Cambridge, Ohio. The State presented testimony from Donna Cobb, the victim of said robbery. Ms. Cobb testified that she had just begun her shift on November 18, 2004, when a person dressed in all black and wearing a black baseball cap walked in through the front door and pulled a knife. (T. at 124). Ms. Cobb testified that the robber was a skinny, white male who had facial hair and a ponytail stuffed under his cap. (Id.). Ms. Cobb recalled that the robber pulled a knife out from behind his back and ordered her to open the register. (T. at 121). On cross-examination, Ms. Cobb admitted that in a taped statement to the police immediately after the robbery occurred, she stated that the robber was 5'6 or 5'7" inches tall and appeared to be in his 30s. (T. at 142). Mr. Blacker was 25 years old at the time of his trial and is 6'1" inches tall. (T. at 354, 363). Ms. Cobb told Officer LePage that Mr. Blacker was not the robber in a show-up at the market only one hour after the robbery occurred. (T. at 145). On cross examination, Ms. Cobb testified that her first response to officers, an hour after the robbery, was that the appellant was not the robber, because he was not wearing black clothes. (T. at 145). Under oath, Ms. Cobb identified appellant as the man who robbed her. (T. at 124).
 {¶ 5} Jessica Webb testified that Ms. Cobb came out of Secrest Carryout, saying that she had just been robbed. Ms. Cobb gave her the description of the person who had just robbed the store. Ms. Webb then got into her car and went off to find a person matching that description. Ms. Webb testified further that she saw someone who matched the robber's description get into a blue Dynasty looking car, which was being driven by a woman. (T. at 153-157). Stephanie Morris also testified at trial. On the day of the robbery, she saw a little blue car pull up in front of her neighbor's home, and she saw the passenger get out of the car with something in his arms. Ms. Morris also testified that she saw Melissa Bowman get out of the driver's side of the car and go into the house. (T. at 183-189). On cross examination, Ms. Morris testified that she did not remember at the time she gave her statement to police that the passenger was wearing black pants, but that she did remember that he had a blond ponytail. (T. at 192).
 {¶ 6} Patrolman Greg Clark was on duty when he heard the description of the Secrest robbery over the radio. (T. at 230). While driving around, Clark saw a vehicle that matched the description given. (T. at 233). The vehicle was parked in front of Steve Rubicam's house. (T. at 236). After backup arrived, the officers approached the house and obtained consent to search from Mr. Rubicam. (T. at 240). Officers found a bag of cash in the sleeve of a coat hanging in Mr. Rubicam's closet. (T. at 333). However, no knives matching Cobb's description were ever found. (T. at 335). A black baseball cap and a black shirt were found in Melissa Bowman's car, which was parked outside of Mr. Rubicam's house. (T. at 336). Mr. Blacker was arrested when he emerged from the garage. (T. at 362).
 {¶ 7} Steven Rubicam, the owner of the home in which appellant and Melissa Bowman were arrested following the robbery testified that appellant seemed stressed and hyper, and that he came into the house with a brown paper bag with money in it. (T. at 205).
 {¶ 8} Melissa Bowman also testified as to the robbery of Secrest Carryout. In her testimony, she stated that on November 18, 2004, her boyfriend, appellant, had talked about robbing Secrest, and that he wanted her to drive him to the carryout and drop him off so he could rob it. (T. at 257). She further testified that she dropped him off at Secrest, and that he had a kitchen butcher knife on him when he went into the store. (T. at 261). Ms. Bowman also stated that the original plan was that he was to jump right back into her car, but he ran past it, and that she had to drive down the alley to catch up with him and that is when he jumped into her car. (Tr. at 262-263).
 {¶ 9} On August 25, 2005, the jury returned a verdict of "guilty" as to Count One of the Indictment, alleging robbery of the Secrest Carryout (hereinafter "Secrest robbery") and a verdict of "not guilty" as to Count Two of the Indictment, alleging robbery of Plus One Pizza (hereinafter "Plus One robbery"). Sentencing took place on September 19, 2005, and appellant was ordered to serve a stated term of seven years in prison.
 {¶ 10} Appellant timely appeals raising the following errors for our review:
 {¶ 11} "I. IN VIOLATION OF DUE PROCESS, THE JURY'S VERDICT FINDING NATHANIEL BLACKER GUILTY OF AGGRAVATED ROBBERY AS ALLEGED IN COUNT ONE OF THE INDICTMENT WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (TR. 422; SEPTEMBER 20, 2005 JUDGMENT ENTRY).
 {¶ 12} "II. TRIAL COUNSEL'S CONSTITUTIONALLY DEFICIENT PERFORMANCE DEPRIVED NATHANIEL BLACKER OF HIS RIGHT TO THE DUE PROCESS OF LAW. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION. (TR. 197, 345, 370-73, 458-70).
 {¶ 13} "III. THE. TRIAL COURT ERRED WHEN IT SENTENCED NATHANIEL BLACKER TO A NON-MINIMUM PRISON TERM BASED UPON FACTS THAT WERE NOT PROVEN TO THE JURY BEYOND A REASONABLE DOUBT OR ADMITTED BY MR. BLACKER. (TR. 447-70, JUDGMENT ENTRY)."
 I. {¶ 14} In his first assignment of error appellant contends that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 15} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 16} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 17} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 18} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v.Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 19} The Ohio Supreme Court has held that an inconsistency in a verdict cannot arise out of inconsistent responses to different counts. State v. Brown (1984), 12 Ohio St.3d 147,465 N.E.2d 889, syllabus; Griffin v. State (1868), 18 Ohio St. 438, 4444-45. The court has held that an inconsistency can only arise when the jury gives inconsistent responses to the same count.Brown, 12 Ohio St. 3d at syllabus. The court explained that each count in an indictment charges a distinct offense and is independent of all other counts. Following that reasoning, the court found that a jury's decision as to one count is independent of and unaffected by the jury's finding on another count.
 {¶ 20} Accordingly, in the case at bar, there is no inconsistency in the jury's verdicts. The charges concerning the Secrest robbery are independent of and unaffected by the jury's finding with respect to the charges concerning the Plus One robbery. That leaves for our consideration, appellant's claims that the verdict pertaining to the offense of aggravated robbery with respect to Count One of the Indictment, i.e. the Secrest robbery, is against the sufficiency and weight of the evidence.
 {¶ 21} To find appellant guilty of aggravated robbery the jury would have to find that appellant in attempting or committing a theft offense or fleeing immediately after the attempt or commission of the offense did have a deadly weapon as defined in R.C. 2923.11 on or about his person or under his control and did display the weapon, brandish it, indicate that he possessed it or used the weapon. R.C. 2911.01(A) (1).
 {¶ 22} The parties do not dispute that an aggravated robbery had occurred; appellant's main argument is that there was insufficient evidence to identify him as the assailant in the robbery.
 {¶ 23} The appellant's arguments in this respect amount to nothing more than attacks upon the credibility of the State's witnesses. Melissa Bowman testified that she drove appellant to the Secrest Carryout. At the time she dropped appellant off at the store he had in his possession a butcher knife. Donna Cobb testified that the appellant had a knife and threatened her at the time of the robbery. Steven Rubican testified that appellant and Ms. Bowman returned home in an agitated state with a brown grocery bag full of money. A video surveillance tape of the robbery was admitted into evidence at trial.
 {¶ 24} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 25} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 26} Viewing this evidence linking appellant to the aggravated robbery of the Secrest Carryout in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of aggravated robbery.
 {¶ 27} We hold, therefore, that the state met its burden of production regarding each element of the crime of aggravated robbery and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 28} Although appellant testified that Ms. Bowman and some unidentified third party robbed the market, and further cross-examined the State's witnesses in an attempt to show that the witnesses gave inconsistent description of the suspect, the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig
(Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v.Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v.Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citingState v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 29} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant in attempting or committing a theft offense or in fleeing immediately after the attempt or offense had a deadly weapon on or about the appellant's person or under the appellant's control and either displayed the weapon, brandished it, or indicated that he possessed a deadly weapon.
 {¶ 30} Accordingly, appellant's conviction for aggravated robbery was not against the manifest weight of the evidence.
 II. {¶ 31} In his second assignment of error appellant maintains he received ineffective assistance of counsel. We disagree.
 {¶ 32} The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
 {¶ 33} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudice by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the Strickland test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. State v.Godfrey, (Ohio App. 5 Dist. 1999) 1999 WL 770253 *1.
 {¶ 34} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 35} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 36} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 37} Appellant first argues that counsel was ineffective in failing to object to the admission of or to request a limiting instruction with respect to appellant's prior convictions for theft, forgery uttering and fraudulent use of a credit card. Appellant testified at trial.
 {¶ 38} "`The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'"State v. Fears (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting State v. Holloway (1988), 38 Ohio St.3d 239, 244,527 N.E.2d 831.
 {¶ 39} In State v. Arrington (1975), 42 Ohio St.2d 114,120, 3256 N.E.2d 667, 671 the Ohio Supreme Court noted "the general rule established by a line of unanimous decisions of this court is that the defendant may be cross-examined as to his conviction of a crime under state or federal laws for the purpose of testing credibility. R.C. 2945.42; Harper v. State (1922),106 Ohio St. 481, 140 N.E. 364; State v. Murdock (1961),172 Ohio St. 221, 174 N.E.2d 543; State v. Woodards (1966),6 Ohio St.2d 14, 25, 215 N.E.2d 568. `The term `crime' includes both misdemeanors and felonies under state laws.' State v. Murdock,
supra, paragraph one of the syllabus".
 {¶ 40} The trial court in its charge instructed the jury that appellant's convictions could only be used for impeachment purposes. (T. at 406).
 {¶ 41} Accordingly, appellant's contention that counsel was ineffective for failing to object or request a limiting instruction with respect to the prior convictions is feckless.
 {¶ 42} Appellant next argues that counsel was ineffective in failing to object to the prosecutors' use of a photograph of the appellant taken on the day the robbery occurred because the prosecutor did not disclose the photograph in discovery.
 {¶ 43} Crim.R. 16(E) (3) vests in the trial court the discretion to determine the appropriate response for failure of a party to disclose material subject to a valid discovery request. In State v. Parson (1983), 6 Ohio St.3d 442, 445, 6 OBR 485,487, 453 N.E.2d 689, 691, the court observed that, under such circumstances, "the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option." Reversible error exists only where the exercise of such authority by the trial court constitutes an abuse of discretion. State v. Parson, supra, at 445, 6 OBR at 487-488,453 N.E.2d at 691; State v. Apanovitch (1987),33 Ohio St.3d 19, 26, 514 N.E.2d 394, 402.
 {¶ 44} In Parson, supra, a tripartite test was set forth to determine whether a trial court abused its discretion in admitting undisclosed discoverable evidence.
 {¶ 45} The syllabus to Parson provides as follows:
 {¶ 46} "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B) (1) (a) (ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E) (3) by permitting such evidence to be admitted." See, also,State v. Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1.
 {¶ 47} There is nothing in the record below to indicate that the state's failure to disclose the photograph was a willful violation of Crim.R. 16 or anything other than a negligent omission on its part. See State v. Edwards (1976),49 Ohio St.2d 31, 42, 358 N.E.2d 1051. Second, the appellant has not demonstrated, or even alleged, how foreknowledge of the non-disclosed photograph would have benefited him in the preparation of his defense. It is noteworthy that at the time the evidence was admitted, no request for a continuance or other remedy was made by appellant. Further as the photograph was of the appellant himself, appellant was well aware of its existence. Appellant admitted on direct examination at trial that his appearance had changed between the date of the robbery and the date of trial. (T. at 363). Appellant admitted that the photograph was a fair and accurate description of his appearance on the date in question. (Id. at 366-67). Accordingly, prejudicial effect upon appellant was not demonstrated. SeeState v. Cooper (1977), 52 Ohio St.2d 163, 177; State v.Parsons, supra 6 Ohio St.3d at 445, 453 N.E.2d at 692.
 {¶ 48} As the photograph was properly admitted at trial, counsel cannot be found ineffective for failing to object to its admission.
 {¶ 49} Appellant's final contention is that counsel was ineffective for failure to object to the court's imposition of a non-minimum prison term based upon State v. Foster,
109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
 {¶ 50} Counsel had no duty to anticipate a change in the law.Engle v. Isaac (1982), 456 U.S. 107, 102 S.Ct. 1558,71 L.Ed.2d 783; Alvord v. Wainwright (C.A. 11, 1984), 725 F.2d 1282;Poole v. United States (C.A. 11, 1987), 832 F.2d 561; Brunsonv. Higgins (C.A. 8, 1983), 708 F.2d 1353, 1356.
 {¶ 51} To establish ineffective assistance of counsel an appellant must show that his attorney failed to exercise the customary skill and diligence of a reasonably competent attorney. In this case, however, the viability of the challenge which counsel failed to assert was not established at the time the appellant was sentenced. Regardless of whether other attorneys may have been filing challenges to sentencing provisions of R.C.2929.14 or R.C. 2929.41, we must conclude that he cannot be found to have fallen below the standard of customary skill and diligence for failure to present what was at the time a speculative, rather than an established, challenge. Cf. State v.Williams (1991), 74 Ohio App.3d 686, 600 N.E.2d 298; Brunson v.Higgins (1983), 708 F.2d 1353.
 {¶ 52} Accordingly, appellant's second assignment of error is overruled.
 III. {¶ 53} In his third assignment of error, appellant argues that the trial court's imposition of more than the minimum sentence is unconstitutional pursuant to United States v.Booker (2005),543 U.S. 220, 125 S.Ct. 738, Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. We agree.
 {¶ 54} In Foster the Court found, in relevant part to appellant's assignment of error, the provisions addressing "more than the minimum" sentence for offenders who have not previously served a prison term pursuant to R.C. 2929.14(B) required the sentencing court to make findings beyond those facts found by a jury or admitted by an accused. Id. at ¶ 61.
 {¶ 55} The Court found both provisions to be unconstitutional under the United States Supreme Court decisions in Apprendi v.New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. However, the Ohio Supreme Court inFoster found that the offending provisions of the sentencing law are severable. The Court concluded that after severing those provisions judicial fact-finding is not required before a prison term can be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant, or before imposition of consecutive prison terms. Id. at paragraphs 2 and 4 of the syllabus.
 {¶ 56} The Court in Foster, supra, provided the following instructions to the lower courts: "[t]these cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order re-sentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protectSixth Amendment principles as they have been articulated.
 {¶ 57} "Under R.C. 2929.19 as it stands without (B) (2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66L.Ed.2d 328". Id. at ¶ 104-105. Before imposing a greater/harsher sentence, the trial courts should be mindful of the restraints set forth in North Carolina v. Pearce (1969),395 U.S. 711, 89 S.Ct. 2072. As the Pearce decision emphasized "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id. at 2081.
 {¶ 58} The State of Ohio concedes that this case must be returned to the trial court for re-sentencing.
 {¶ 59} Appellant's third assignment of error is sustained. Accordingly, this case is remanded to the trial court for re-sentencing in light of the remedial severance and interpretation of Ohio's felony sentencing statutes as set forth in the Foster decision.
 {¶ 60} For the foregoing reasons, the sentence of the Court of Common Pleas of Guernsey County, Ohio, is hereby reversed. The sentence is vacated and this matter is remanded to the trial court for re-sentencing in accord with the law and consistent with this opinion.
Gwin, J., Wise, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the sentence of the Court of Common Pleas of Guernsey County, Ohio, is hereby affirmed in part and reversed in part. The sentence is vacated and this matter is remanded to the trial court for re-sentencing in accord with the law and consistent with this opinion. Costs to appellee.