IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
October 29, 2021 02:41 PM
SX-2017-CV-00319
TAMARA CHARLES
CLERK OF THE COURT

# SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | |
|---|---|
| **MERAL SMITH,** | |
| PETITIONER, | **Civil No. SX-17-CV-319** |
| v. | **CITE AS: 2021 VI SUPER 108U** |
| **WYNNIE TESTMARK, DIRECTOR OF THE VIRGIN ISLANDS BUREAU OF CORRECTIONS,** | |
| RESPONDENT. | |

**Appearances:**
**Meral Smith,** *Pro Se*
*For Petitioner*

**Denise N. George, Esq.**
Virgin Islands Department of Justice
St. Thomas, U.S. Virgin Islands
*For Respondent*

## MEMORANDUM OPINION

**WILLOCKS, Presiding Judge**

¶ 1     **THIS MATTER** is before the Court sua sponte for review.

### BACKGROUND

¶ 2     On July 25, 2017, Petitioner Meral Smith (hereinafter "Petitioner") filed a petition for writ of habeas corpus (hereinafter "July 25, 2017 Petition") and Rick Mullgrav, Director of Virgin Islands Bureau of Correction was named as the respondent (hereinafter "Respondent").[1] On January 16, 2018, Petitioner filed a supplemental pleading to his July 25, 2017 Petition.

---

[1] On July 30, 2019, the Court entered an order whereby the Court ordered the caption amended to reflect that Wynnie Testamark is now the Director of the Virgin Islands Bureau of Corrections. Thus, "Respondent" as used herein will refer to the then current Director of the Virgin Islands Bureau of Corrections.

¶ 3     On February 28, 2018, the Court entered an order whereby the Court scheduled a review hearing on June 29, 2018.

¶ 4     On March 20, 2018, Petitioner filed a petition for a writ of habeas corpus ad testificandum whereby Petitioner requested the Court to "require[e] [Respondent] to bring the Petitioner before the Court for the review hearing." (March 20, 2018 Petition.)

¶ 5     On May 21, 2018, Respondent filed a motion for the June 29, 2018 review hearing to proceed via video conference, which was subsequently granted by the Court by an order entered on May 25, 2018.

¶ 6     On June 21, 2018, Petitioner filed a motion for a new order in response to the Court's May 25, 2018 order.

¶ 7     On June 29, 2018, the review hearing was continued due to technical difficulties.

¶ 8     On July 12, 2018, Petitioner filed a motion for decisions on motions/petition pending.

¶ 9     On March 1, 2019, the Court entered and issued a writ of habeas corpus (hereinafter "March 1, 2019 Writ") whereby the Court granted Petitioner's July 25, 2017 Petition as to Claim One and Claim Five—to wit, "the issues of lack of due process in his transfer and the unavailability of educational programs," denied Petitioner's July 25, 2017 Petition as to Claim Two, Claim Three, Claim Four, and Claim Six—to wit, "the allegations that the Petitioner may not be incarcerated in a privately owned prison facility, that the Respondent is required to establish written criteria for transfer and selection of facilities, and that Petitioner must be able to review of BOC's agreement with Saguaro," ordered Respondent to file a return, and ordered that Petitioner may file a traverse thereafter.[2] (March 1, 2019 Writ.)

---

[2] In the March 1, 2019 Writ, the Court explained:

A review of the Petition indicates that the Petitioner is ultimately requesting relief based on the following six claims 1) that he was transferred from Golden Grove to a facility outside of the Territory in violation of the Virgin Islands Rules & Regulations 2) that it is illegal to have the Petitioner confined in a privately owned prison, 3) that Saguaro does not comply with the Virgin [stands Code and the Respondent has no written criteria for determining compliance, 4) that the Respondent has violated the Virgin Islands Code by failing to establish written criteria for determining whether a transfer facility meets statutory requirements for educational programs and how those programs will enable inmates to gain marketable skills, 5) that the Petitioner has been prevented from taking part in any educational or vocational programs at Saguaro, and 6) that the Petitioner has not been allowed to review the contract between the Virgin Islands Bureau of Corrections (hereinafter 'BOC") and the owner of the Saguaro facility For the following reasons the Petition will be granted in part and denied in part.

...

### Claim One: Failure to Follow Transfer Procedure

...

In the present case, the Petitioner alleges that he had no warning of a transfer and was forcibly removed from Golden Grove to Saguaro. (*See* Pet. ¶¶ 1-10.) He alleges that he received no notice and that no hearing took place in accordance with the Virgin Islands Rules & Regulations. (*See id.*) These allegations, presumed to be true, establish a prima facie case for habeas relief.

### Claim Two: Illegal Confinement in a Private Prison

...

In this case, the Virgin Islands Legislature had the authorization to amend or enact local laws, which it chose to do when it authorized the transfer of inmates to privately owned facilities. Further, the change in the law does not make it an unconstitutional *ex post facto* law because it is not penal and does not further punish the Petitioner. Further, there are additional due process protections in place in the form of the transfer hearing outlined in subchapter 4503 of the Virgin Islands Rules and Regulations. As such, the Petitioner has not proven prima facie that his confinement in a privately owned prison is illegal.

### Claim Three: Failure to Establish Criteria to Determine Whether a Transfer Out of Territory is Warranted

...

The mirrored language of Section 4503 and the Virgin Islands Rules & Regulations indicates that a determination must be made by the Director of BOC, but not that the Director must establish any further written guidelines for doing so. Rather, the due process the Petitioner claims is lacking stems from the mandatory transfer hearing the procedure for which is set out in subchapter 4503 of the Virgin Islands Rules and Regulations, and the committee's written findings. For that reason, the Petitioner has not made a prima facie case for relief for failure to adopt further criteria for transfer outside of the Territory.

### Claim Four: Failure to Establish Criteria to Determine Whether Transfer Facilities Comply with Virgin Islands Law

...

As above the establishment of selection criteria is not the issue. The potential denial of rights does not stem from the lack of criteria, but from the transfer to a facility that is not in compliance with Virgin Islands law. The remedy for this violation is not to establish new guidelines but to remove an inmate to an appropriate correctional facility. Therefore, the Petitioner's allegations, though taken as true, are an insufficient prima facie claim of relief.

### Claim Five: Participation in Educational Programs

...

It is not made clear by the Petitioner whether the problem is that Saguaro does not have any educational programs, or that the Petitioner has been denied participation in existing programs. In the interest

¶ 10    On March 18, 2019, Petitioner filed a motion for reconsideration and correction in response to the Court's March 1, 2019 Writ. In the March 18, 2019 motion, Petitioner advised the Court that the sequence of events outlined in the March 1, 2019 Writ were inaccurate and clarified that Petitioner was prosecuted in the District Court of the Virgin Islands and that "he was taken directly out of the courtroom after being sentenced and transferred out of the Virgin Islands to Puerto Rico and then to Federal Bureau of Prisons (BOP) facilities in America." (March 18, 2019 Motion, p. 1.)

¶ 11    On March 20, 2019, Petitioner filed a motion for a show cause order whereby Petitioner requested the Court to require "Respondent file an answer (response) to Petitioner's [July 25, 2017 Petition] within 30 days herefrom, showing under what legal authority and due process procedures he used to transfer Petitioner from Golden Grove Prison, St. Croix, Virgin Islands to Saugaro Correctional Facility in Elroy Arizona on March 8, 2016 and to two other private prisons operated by Corrections Cooperation [sic] of America..." (March 20, 2019 Motion.)

¶ 12    On April 2, 2019, Petitioner filed a motion for immediate release and relief.

---

of protecting the Petitioner's statutory right to educational programs while incarcerated, the Court will assume that the Petitioner meant to say that Saguaro does not have the appropriate programs. Taking that statement as true, the Petitioner has alleged a prima facie case for habeas relief. Any further question of whether the Petitioner has been denied participation by the staff at Saguaro is an issue that may be addressed in future proceedings.

        *Claim Six: Review of Contract Between Saguaro and BOC*

    ...

The Respondent is therefore allowed to make an agreement for the Petitioner to be incarcerated outside of the Territory, and this statute does not give the Petitioner the right to review that agreement especially as he has not alleged that Saguaro is not accredited. As already determined above, the issues of transfer procedure and availability of educational programs will be addressed in this litigation. Therefore, the Petitioner has not made a prima facie case for relief on this claim.

(March 1, 2019 Writ) (footnotes omitted.)

¶ 13    On April 30, 2019, Petitioner filed another motion for a show cause order whereby Petitioner requested the Court to require "Respondent file an answer (response) to Petitioner's [July 25, 2017 Petition] within 30 days herefrom, showing under what legal authority and due process procedures he used to transfer Petitioner from Golden Grove Prison, St. Croix, Virgin Islands to Saugaro Correctional Facility in Elroy Arizona on March 8, 2016 and to two other private prisons operated by Corrections Cooperation [sic] of America..." (April 30, 2019 Motion.)

¶ 14    On April 30, 2019, Petitioner filed a traverse.

¶ 15    On June 11, 2019, Respondent filed a return.

¶ 16    On July 12, 2019, the Court entered and issued a memorandum opinion and writ of habeas corpus (hereinafter "July 12, 2019 Writ") whereby the Court noted that Petitioner's motion for reconsideration "relates to the three denied claims that stem from Title 5 Section 4503(c) of the Virgin Islands Code...which authorizes the Director of the Bureau of Corrections...to make prisoner transfers out of the territory when the territory facilities 'are inadequate to serve the best interest of the inmate or the general interest or welfare' of the Virgin Islands," granted Petitioner's March 18, 2019 motion for reconsideration as to Claim Three, denied Petitioner's March 18, 2019 motion for reconsideration as to Claim Two and Claim Four, ordered the Respondent to file a return addressing Claim One, Claim Three, and Claim Five, and ordered that Petitioner may file a traverse.[3]

---

[3] In the July 12, 2019 Writ, the Court explained:

> *Claim Two: Confinement in a Private Prison*
>
> ...
>
> In the Motion for Reconsideration, the Petitioner brings up additional information that was not included in the Petition, including that he is subject to a contract agreement between (presumably) the Virgin Islands Bureau of Corrections (hereinafter "BOC") and the federal government that he remain confined in the Virgin Islands. Even if these allegations been made in the Petition, the Court would not have allowed the claim to move forward because the Petitioner misstates his situation. Though the Petitioner was tried in the

¶ 17 On July 29, 2019, Petitioner filed a first amended petition for writ of habeas corpus (hereinafter "Amended Petition").

---

District Court of the Virgin Islands, the charges were based on local law and he was sentenced accordingly and ultimately placed in the custody of BOC. As such, the Court is not concerned with any prior agreement made with the federal government to house the Petitioner, only with the BOC's current arrangement. Further, a litigant is not allowed to submit new arguments or facts to the Court in a motion for reconsideration when they should have been brought up previously. Since the Petitioner's allegations regarding Claim Two do not state a prima facie case for relief the Court will not reverse its denial of the claim.

> *Claim Three: Criteria for Initiating Transfer Out of the Territory*
>
> . . .
>
> Upon review of this issue, the Court sees that it overlooked the allegation that the Respondent may have acted arbitrarily in selecting the Petitioner for relocation over other inmates. However, the Petitioner's assertion that there are no written guidelines for choosing when to transfer a prisoner is not viable because the guidelines are clearly listed in the Rules & Regulations. The Court also finds that the guidelines in the Rules & Regulations also apply indirectly to the Director's inquiry regarding whether the facilities in the Virgin Islands may be inadequate. For example, Virgin Islands facilities are inadequate when an inmate requires medical care that is unavailable to him in the Virgin Islands.
>
> The Court maintains its position that any violation of due process stems not from a lack of written guidelines for the Respondent to follow—and it would likely be the Respondent who would make those rules anyhow—but from the denial of a transfer hearing at which a person can hear the reasons for his transfer give objections.
>
> In sum, the Court will allow Claim Three to proceed on the allegation that the Respondent acted arbitrarily in choosing the Petitioner for transfer but will not hear anything further relating to written guidelines for transfer or choosing transfer facilities. The Court will redefine Claim Three as an assertion of arbitrary transfer out of the territory in noncompliance with Section 4503-9 of the Rules & Regulations.
>
> *Claim Four: Criteria for Choosing Transfer Facilities*
>
> . . .
>
> This issue was addressed in one of the Petitioner's previous habeas corpus cases.
>
> > Appellant's challenge is predicated on the contention that the Director of the Bureau of Corrections failed to promulgate rules and regulations mandated by the legislature, establishing the procedure by which the Bureau of Corrections ascertained the availability of educational and/or vocational programs at the institution to which a Virgin Islands inmate is transferred. However in this matter, the words of the statute are clear. A plain reading of this statute reveals that the Attorney General must: 1) determine that educational programs exist at the facility to which an inmate is transferred; 2) ascertain that the purpose of such programs are for inmates to gain marketable skills; and 3) ensure that no inmate be transferred to an) institution lacking such programs. There is no requirement that the programs be comparable nor that the Attorney General promulgate rules that ascertain that one institution's programs are more or less effective at making an inmate marketable than another institution's programs. While Appellant's desire to seek educational opportunities tailored to his aspirations are well placed, the statute cannot be interpreted to create procedures nor objective criteria that are not within its texted.
>
> For the reasons stated above, the Court will not reconsider its disposition of Claim Four. The Petitioner has not made a prima facie case for relief on the basis that the Respondent must draft written guidelines for choosing a transfer facility and ensuring that it has adequate educational programs.
>
> (July 12, 2019 Writ) (footnotes omitted.)

¶ 18    On August 2, 2019, Respondent filed a second return in response to the Court's July 12,

2019 Writ.

¶ 19    On August 19, 2019, Petitioner filed a motion for extension to file supplemental traverse

in response to Respondent's second return.

¶ 20    On January 11, 2021, Petitioner filed a motion for immediate decision and order whereby

Petitioner requested the Court to issue an order granting the relief requested therein.

## JURISDICTION

¶ 21    The Superior Court of the Virgin Islands is authorized to hear petitions for writ of habeas

corpus pursuant to Title 5 V.I.C. § 1303 and Rule 1(c) of the Virgin Islands Habeas Corpus Rules.

## STANDARD OF REVIEW

¶ 22    Title 5 V.I.C. § 1301 provides that "[e]very person unlawfully imprisoned or restrained of

his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the

cause of such imprisonment or restraint." Title 5 V.I.C. § 1304 provides that "[t]he court authorized

to grant the writ, to whom a petition therefor is presented, shall grant the same without delay, if it

appears that the writ ought to issue." Rule 2 of the Virgin Islands Habeas Corpus Rules provides:

> The court must issue a writ of habeas corpus if the petitioner has alleged prima facie, grounds showing entitlement to relief and the claims are not legally barred. In assessing whether the petitioner would be entitled to relief if the factual allegations were proved, the court must take petitioner's factual allegations as true. The court does not determine at this stage whether the petitioner is entitled to discharge or any other form of remedy if habeas relief is ultimately granted. The issuance of a writ of habeas corpus under this Rule is an intermediate step pursuant to [Title] 5 V.I.C. § 1304 which does not award any of the relief sought in the petition, but requires the respondent to file a return, responding to the petition.
>
> V.I. H.C.R. 2(d)(1).

In *Blyden v. Gov't of the Virgin Islands*, the Virgin Islands Supreme noted that "it is sufficient that

a petitioner simply make allegations that, if later proven true, would entitle him to habeas relief"

and that "[o]nce that modest burden is met, the petitioner has a right to the writ of habeas corpus, requiring the Government to "file a 'return' responding to the allegations in the habeas corpus petition," and produce the petitioner for an evidentiary hearing on the claims in his petition. 64 V.I. 367, 380 (V.I. 2016).

## DISCUSSION

¶ 23    The Court will address the outstanding motions and Petitioner's Amended Petition in turn.

### A. Outstanding Motions

¶ 24    Upon review of the record, the Court will order the following: (i) Petitioner's March 20, 2018 petition for a writ of habeas corpus ad testificandum will be denied as moot since the June 29, 2018 review hearing date already passed; (ii) Petitioner's June 21, 2018 motion for a new order in response to the Court's May 25, 2018 order[4] will be denied as moot since the June 29, 2018 review hearing date already passed; (iii) Petitioner's July 12, 2018 motion for decisions on motions/petition pending will be denied as moot since the Court already ruled on Petitioner's July 25, 2017 Petition and the substantive motions filed up to that date; (iv) Petitioner's March 20, 2019 and April 30, 2019 motions for a show cause order will be denied as moot since the Court already ordered Respondent to file a return in response to Petitioner's July 25, 2017 Petition;[5] (v) Petitioner's April 2, 2019 motion for immediate release and relief will be denied since Petitioner subsequently filed an Amended Petition, and "[t]he court does not determine at this stage whether

---

[4] The Court's May 25, 2018 order granted Respondent's May 21, 2018 motion for the June 29, 2018 review hearing to proceed via video conference.

[5] Under Rule 2 of the Virgin Islands Habeas Corpus Rules, "[t]he return must explain under what lawful order the petitioner is detained and must allege facts establishing the legality of the petitioner's custody" and "must comply with [Title] 5 V.I.C. § 1308." V.I. H.C.R. 2(e). Title 5 V.I.C. § 1308 provides that "[t]he person upon whom the writ is served shall state in his return, plainly and unequivocally—(1) whether he has or has not the party in his custody or under his power or restraint; and (2) if he has the party in his custody or power, or under his restraint, the authority and cause of such imprisonment or restraint." Title 5 V.I.C. § 1308(a).

the petitioner is entitled to discharge or any other form of remedy if habeas corpus relief is ultimately granted" and that "[t]he issuance of a writ of habeas corpus under this Rule is an intermediate step pursuant to [Title] 5 V.I.C. § 1304 which does not award any of the relief sought in the petition, but requires the respondent to file a return, responding to the petition." V.I. H.C.R. 2(d)(1); (vi) Petitioner's August 19, 2019 motion for extension to file supplemental traverse in response to Respondent's second return will be denied as moot since Petitioner filed an Amended Petition; and (vii) Petitioner's January 11, 2021 motion for immediate decision and order will be denied since Petitioner's Amended Petition is still pending before the Court and "[t]he court does not determine at this stage whether the petitioner is entitled to discharge or any other form of remedy if habeas corpus relief is ultimately granted" and that "[t]he issuance of a writ of habeas corpus under this Rule is an intermediate step pursuant to [Title] 5 V.I.C. § 1304 which does not award any of the relief sought in the petition, but requires the respondent to file a return, responding to the petition." V.I. H.C.R. 2(d)(1).

### B.  Petitioner's Amended Petition[6]

¶ 25   Upon review of the Amended Petition, the Court finds that Petitioner is ultimately requesting habeas relief based on the following four claims: (i) Petitioner was transferred from a U.S. Virgin Islands prison to stateside prison facilities in violation of his rights under Virgin Islands laws (Claim One); (ii) Petitioner has been denied "access to educational and/or vocational programs during his term of imprisonment in any U.S. mainland prisons" in violation of his rights Virgin Islands laws (Claim Two); (iii) Petitioner's "confinement in a mainland prison affected the

---

[6] Neither the Virgin Islands Code nor in the Virgin Islands Habeas Corpus Rules addresses filing an amended petition for writ of habeas corpus. At this juncture, the Court sees no reasons to not accept Petitioner's Amended Petition. *Cf.* V.I. H.C.R. 2(k) ("A petitioner should raise all then-available legal grounds in support of the writ of habeas corpus in the initial application; provided, however, that successive habeas corpus petitions may be filed.").

length of his sentence by depriving him of the ability to seek early parole release" in violation of his right to seek early parole release under Virgin Islands laws and his right to due process (Claim Three); and (iv) Petitioner's "rights to be free from retaliatory actions for exercising his constitutional rights to seek redress, is being violated by his transfer to U.S. mainland prisons" in violation of "his due process rights."

### *Claim One: Petitioner's Transfer to Stateside Prison Facilities was in Violation of His Rights Under Virgin Islands Laws*

¶ 26    In his Amended Petition, Petitioner alleged, inter alia, that: (i) "On March 8, 2016 in the early morning, Petitioner was told that he was being transferred from St. Croix to a prison within the United States of America." (Amended Pet. ¶ 1); (ii) Petitioner was then transferred to "Saguaro Correctional Center in Eloy Arizona, a private prison, operated by Corrections Corporation of America (CCA), now known as CoreCivic (CC) on March 8, 2016 at around 12:30 a.m. [sic], where he was incarcerated until October of 2017 when Petitioner… w[as] transferred to Central Arizona Detention Center in Florence, Arizona." (Amended Pet. ¶ 10); (iii) "In February 6, 2018 Petitioner was moved from Central Arizona Detention Center in Florence Arizona to Tallahatchie County Correctional Facility, in Tutwiler, Mississippi, where Petitioner remained housed up until May 13, of 2019." (Amended Pet. ¶ 11); (iv) "In May of 2019 Petitioner was transferred from Tallahatchie County Correctional Facility in Mississippi to CCA/Citrus County Detention Facility in Lecanto Florida (operated by Core Civic Corporations), where Petitioner is presently confined." (Amended Pet. ¶ 12); (v) "Prior to Petitioner's transfer to U.S. mainland Prisons from Golden Grove Adult Correctional Faculty in St. Croix U.S.V.I., Petitioner was not provided with a hearing or notice of the proposed transfer, and was not provided with an opportunity to contest the transfer in accordance with the procedural requirements under the Virgin Islands Rules and Regulations

(VIRR) that should be provided to a U.S. Virgin Islands inmate before he may be transferred to a U.S. Mainland Institution." (Amended Pet. ¶ 14); (vi) "Respondent…did not perform the analysis under the VIRR's to ascertain whether or not petitioner's transfer would have been in Petitioner's best interest or the best interest or welfare of the U.S. Virgin Islands, or if any of the other criteria's for transfer under the VIRR's or the V.I. Transfer statute, existed." (Amended Pet. ¶ 15); (vii) "Petitioner's transfer to a mainland prison was not in Petitioner's best interest nor the best interest or the welfare of the U.S. Virgin Islands, nor did any of the other criteria's under the VIRR's, for transfer of a Virgin Islands inmate to a U.S. mainland prison exist." (Amended Pet. ¶ 16); and(viii) "Petitioner suffered irreparable harm by virtue of loss of his liberty interest, statutory rights and legal rights…by being essentially exiled from the [V]irgin Islands without being provided any procedural due process procedures." (Amended Pet. ¶ 18.)

¶ 27    The Virgin Islands Code provides:

> Commitment to institutions within the jurisdiction of the Bureau [of Corrections] shall be to the Bureau [of Corrections], not to a particular institution. The Director of Corrections shall assign a newly committed inmate to an appropriate institution. He may transfer an inmate from one institution to another, consistent with the commitment and in accordance with treatment, training and security needs.
>
> Title 5 V.I.C. § 4505.

The Virgin Islands Codes also provides that "[t]he Director of Corrections is authorized to enter into agreements to use the correctional or detention facilities of the United States Bureau of Prisons; or the correctional facilities of any state or local government or private correctional entity located in the United States, its territories, possessions, commonwealths or the District of Columbia, which are accredited by the American Correctional Association, when the Director of Corrections determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general interest or welfare of the Territory;

provided that as a condition of and prior to the transfer of any inmates, the Director of Corrections

shall ascertain and insure the availability of educational and/or vocational programs at the

institution they are to be transferred to for the purpose of enabling such inmates to gain marketable

skills, and provided further that no inmate is to be transferred to any institution lacking any such

program(s)." Title 5 V.I.C. § 4503(c). The Code of U.S. Virgin Islands Rules sets forth specific

procedures for the transfer of any prisoner from prison facilities in the Virgin Islands to stateside

prison facilities, including but not limited to, requiring "[a] committee of three persons shall be

formed to hold an administrative hearing prior to the transfer of any prisoner from prison facilities

in the Virgin Islands to stateside prison facilities."[7] Title 5 C.V.I.R. § 4503-1. The Code of U.S.

Virgin Islands Rules also sets forth specific criteria for the selection of inmates to be transferred—

to wit, "Selection of inmates to be transferred may be made by the following criteria and for any

other good cause as determined by the Director; to wit: (1) Prisoners who voluntarily request

---

[7] Other requirements under the Code of U.S. Virgin Islands Rules include: (i) "The committee shall be comprised of the warden or designee acting as chairman, one shift supervisor from the prison correction staff who is familiar with the prisoner and another person who is a member of the staff of the administrator of the prison." Title 5 C.V.I.R. § 4503-2; (ii) "The prisoner shall be given a written notice of the hearing, at least 24 hours prior to the hearing, which notice shall not only state the time and place of the hearing, but the reasons the transfer is being contemplated. An inmate's request for a postponement of his hearing shall be granted unless good cause exists for refusing the request. However, no postponement shall extend more than three (3) days from the date for which the hearing was originally set." Title 5 C.V.I.R. § 4503-3; (iii) "A written statement of the facts or circumstances relied upon by the Bureau and upon which it proposes to determine that the inmate should be transferred shall be presented to the inmate simultaneously with the notice of hearing." Title 5 C.V.I.R. § 4503-4; (iv) "The inmate shall be allowed to call witnesses on his behalf and to present any documentary evidence available to him in an effort to establish that the transfer is unwarranted, unless the Director of the Bureau, in writing, concludes for any reason that compliance with the above would be disruptive to the hearing, would cause an undue burden on the institution's administration, would be unduly hazardous to the safety of the institution or that compliance would compromise institutional safety or correctional goals." Title 5 C.V.I.R. § 4503-5; (v) "In instances in which the inmate is physically or mentally unable to collect and present the evidence necessary for adequate presentation of his case, including those instances in which the inability results from lack of intellectual capacity, the inmate shall be allowed to seek the assistance of a fellow inmate who shall serve as his representative, or if this is deemed not feasible, he shall be afforded adequate substitute aid which may take the form of either assistance from a staff member or from a sufficiently competent inmate designated by the staff." Title 5 C.V.I.R. § 4503-6; and (vi) "A record shall be made of the findings of the committee and the evidence relied on to make the findings as well as a statement of the recommendations. The record of the proceedings shall be forwarded to the Director of the Bureau of Corrections. The Director shall inform the prisoner, in writing, of the findings from the hearing and the reasons for the Director's decision." Title 5 C.V.I.R. § 4503-7.

transfer. (2) Inmates in need of medical or psychiatric care. (3) Recommendation by the Courts to transfer the prisoner. (4) Inmate with long-term sentencing. However, this criterion will be valid only so long as the Virgin Islands lacks facilities for extended segregation of long-term prisoners. For this purpose "long-term" means a sentence of imprisonment of not less than 10 years. (5) A finding by the prison administration that the inmate is a high risk for escaping. (6) A pattern of disruptive action or behavior on the part of the inmate. (7) A finding by the Director that correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general welfare of the Territory." Title 5 C.V.I.R. § 4503-9.

¶ 28    Here, taking Petitioner's factual allegations as true, Petitioner was not given a written notice of an administrative hearing, an administrative hearing was not held prior to Petitioner's transfer to stateside prison facilities, and none of the applicable procedures required under the Virgin Islands Codes and the Code of U.S. Virgin Islands Rules were followed. As such, the Court finds that Petitioner presented a prima facie case that is not procedurally barred regarding his claim that his transfer to stateside prison facilities was in violation of his rights under Virgin Islands laws.

> *Claim Two: Petitioner's Confinement in Stateside Prison Facilities Without Access to Educational and/or Vocational Programs has been a Violation of His Rights Under Virgin Islands Laws*

¶ 29    In his Amended Petition, Petitioner also alleged, inter alia, that "[t]he Correctional Facilities in the U.S. mainland to which Petitioner was transferred did not have any vocational and/or educational programs available to Petitioner (U.S. Virgin Islands inmates), prior to and after Petitioner's transfer to said institutions, therefore depriving Petitioner of the access to these

programs, which he requested during the time he was and is housed in these mainland institutions."
(Amended Pet. ¶ 17.)

¶ 30    As noted above, the Virgin Islands Code requires that "as a condition of and prior to the transfer of any inmates, the Director of Corrections shall ascertain and insure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s)." Title 5 V.I.C. § 4503(c).

¶ 31    Here, taking Petitioner's factual allegations as true, the stateside prison facilities that Petitioner was transferred to did not have any educational and/or vocational programs available to Petitioner. As such, the Court finds that Petitioner presented a prima facie case that is not procedurally barred regarding his claim that his confinement in stateside prison facilities without access to educational and/or vocational programs has been a violation of his rights under Virgin Islands laws.

> ### *Claim Three: Petitioner's Confinement in Stateside Prison Facilities has Deprived Petitioner's Ability to Seek Early Parole Release in Violation of His Right to Seek Early Parole Release Under Virgin Islands Laws and His Right to Due Process*

¶ 32    In his Amended Petition, Petitioner also alleged, inter alia, that: (i) Petitioner's transfer to a U.S. Mainland Prison affects the terms and length of his imprisonment, for Petitioner is required to be examined by a psychiatrist/psychologist in order acquire a recommendation from said psychiatrist/psychologist as one of the requirements of early parole, however, if Petitioner is imprisoned in the U.S. Mainland the Parole Board and the Director has determined that petitioner will not meet the psychiatrist/psychologist's requirements, unless such experts are licensed by the U.S. Virgin Islands Medical Board not any Medical Board of the U.S. Mainland." (Amended Pet.

¶ 21); (iii) "Petitioner cannot remove himself from a U.S. Mainland Prison in order to be examined by a Psychiatrist/Psychologist licensed in the U.S. Virgin Islands, therefore Petitioner's present confinement in a mainland prison which deprives Petitioner of the opportunity for a psychological/psychiatrical [sic] examination in comport with the early parole statute, totally deprives Petitioner of his right to seek early parole release under the laws of the U.S. Virgin Islands." (Amended Pet. ¶ 22); and (iv) "Petitioner… is entitled to seek release on Early Parole under the laws of the U.S. Virgin Islands, but is hindered from doing so as a result of him being housed in a U.S Mainland Prison, in violation of the protections of the due process clause of the U.S. Constitution's 14ᵗʰ amendment of it's [sic] own force." (Amended Pet. ¶ 23.)

¶ 33    The Virgin Islands Code provides:

> Except for a prisoner sentenced to a term of life imprisonment without parole, every prisoner confined in any penitentiary, jail or prison for a violation of the Virgin Islands law for a definite term or terms of over 180 days or for the term of his natural life, whose record of conduct shows that he has observed the rules of the institution in which he is confined, upon recommendation of the Director of the Bureau of Corrections supported by the recommendation of a psychiatrist and/or psychologist, may be released on parole after serving one-half of such term or terms or after serving 15 years of a life sentence or of a sentence of 30 years or more or after serving the minimum sentence required by law, whichever is greater; Provided, however, That the Board of Parole, in its discretion by at least a two-thirds affirmative vote of all its members, upon recommendation by the Directors of the Bureau of Corrections, supported by the recommendation of a psychiatrist and/or psychologist, is authorized to fix an earlier eligibility date for the release of a prisoner on parole after serving one-third of his term or terms or after serving 10 years of a life sentence or of a sentence of 30 years or more.

> Title 5 V.I.C. § 4601.

The Virgin Islands Code further provides that "[a]pplication for parole shall be made in writing." Title 5 V.I.C. § 4603; *see* Title 5 C.V.I.R. § 4503(d)-1(a). The Code of U.S. Virgin Islands Rules

sets forth specific requirements for presentation of applications to the Parole Board.[8] The Code of

U.S. Virgin Islands Rules also provides that "[w]hen the applicant is confined in the Virgin Islands,

he shall have the right, provided he qualifies, to appear before the Board and be given an

---

[8] Requirements for presentation of applications to the Parole Board under the Code of U.S. Virgin Islands Rules include:

(a) All applications for parole shall be in writing.

(b) No application for parole shall be considered unless the prison records reveal that the applicant's conduct has been uniformly excellent for at least six (6) months preceding the date of the submission of his application for parole.

(c) With respect to a prisoner who was convicted for the violation of a Virgin Islands law prior to July 7, 1981, the provisions set forth in subparagraphs (d), (e) and (f) below shall apply.

(d) Unless prohibited by law, and unless he fails to receive the recommendations specified in subparagraph (f) below, every such prisoner confined for over 180 days for violation of a Virgin Islands law may be considered by the Parole Board for release on parole after serving one-third of his term or terms, or after 10 years of a life sentence or a sentence of over 30 years.

(e) Unless prohibited by law, and unless he fails to receive the recommendations specified in subparagraph (f) below, any such prisoner may be considered by the Parole Board for release on parole earlier than above set forth whenever unusual or extenuating circumstances appear to justify such action. In such cases, a description of the unusual or extenuating circumstances shall be submitted in writing to the Parole Board on a form provided by the Warden.

(f) In order to qualify for parole, the applicant must be recommended for parole by: (1) the Warden and (2) a psychiatrist or a psychologist.

(g) With respect to a prisoner who was convicted for the violation of a Virgin Islands law on or after July 7, 1981, the provisions set forth in subparagraphs (h), (i) and (j) below shall apply.

(h) Unless prohibited by law, and unless he fails to receive the recommendations specified in subparagraph (j) below, every such prisoner confined for over 180 days for violation of a Virgin Islands law may be considered by the Parole Board for release on parole after serving one-half of his term or terms, or after 15 years of a life sentence or a sentence over 30 years, or after serving the minimum sentence required by law, whichever is greater.

(i) Unless prohibited by law, and unless he fails to receive the recommendations specified in subparagraph (j) below, any such prisoner may be considered by the Parole Board for release on parole earlier than set forth in subparagraph (h) above after serving one-third of his term or terms or after serving 10 years of a life sentence or of a sentence of 30 years or more whenever unusual or extenuating circumstances appear to justify such action. In such cases a description of the unusual or extenuating circumstances shall be submitted in writing to the Parole Board on a form provided by the Director of the Bureau of Corrections.

(j) In order to qualify for parole, the applicant must be recommended for parole by: (1) the Director of the Bureau of Corrections and (2) a psychiatrist or a psychologist.

(k) Affirmative action by the Board requires the vote of a majority of the voting members present at a meeting, provided that there must be at least three (3) such members voting. The only exception to this rule is that of a recommendation for early parole (see subparagraphs (e) and (i) above) which require a two-thirds vote of all the voting members of the Board.

Title 5 C.V.I.R. § 4503(d)-1(a)-(k); *see* Title 5 C.V.I.R. § 4601-1(a)-(e).

opportunity to orally express his viewpoints on his application for parole" and that "[w]hen applicant is confined elsewhere, he will be given an opportunity to submit his views in writing." Title 5 C.V.I.R. § 4601-10(a).

¶ 34     "When government action deprives a person of liberty or property, the Due Process Clause is trigger. Thus, Courts must examine the nature of an individual's claimed interest when the person alleges a denial of due process. If a person possesses a legitimate claim or entitlement to a liberty or property interest, that interest becomes protectable under the Due Process Clause." *Josiah v. Farrelly*, 28 V.I. 101, 110 (V.I. Terr. Ct. June 15, 1993). Here, Petitioner indeed has a right to apply for parole, early or otherwise, under the Virgin Islands Code and the Code of U.S. Virgin Islands Rules. However, there are no requirements under the Virgin Islands Code or the Code of U.S. Virgin Islands Rules that the prisoner has to be physically located in a prison facility in the Virgin Islands to submit an application for parole and be considered for parole, or that the prisoner has to be physical located in a prison facility in the Virgin Islands to be examined by a psychiatrist or a psychologist, or that the examining psychiatrist or psychologist has to be licensed to practice in the U.S. Virgin Islands. In other words, the location of Petitioner's confinement does not take away his right to apply for parole, early or otherwise, because it does not affect his ability to seek early parole release. As such, the Court finds that Petitioner's factual allegations, even if true, has not set forth a prima facie case regarding his claim that his confinement in stateside prison facilities has deprived his ability to seek early parole release in violation of his right to seek early parole release under Virgin Islands laws and his right to due process.

> ***Claim Four: Petitioner's Transfer to Stateside Prison Facilities was Due to Respondent's Retaliatory Actions to Hinder Petitioner's Ability to Seek Early Parole Release in Violation of His Right to Seek Early Parole Release Under Virgin Islands Laws and His Right to Due Process***

¶ 35    In his Amended Petition, Petitioner also alleged, inter alia, that: (i) "Petitioner's selection for transfer to the U.S. Mainland prisons was arbitrarily and capriciously instituted as Petitioner was selected for transfer only out of personal animosity by the Director and his staff because of petitioner's constant vigilance of seeking early parole release from the U.S. Virgin Islands Parole Board."( Amended Pet. ¶ 19); and (ii) "Petitioner's transfer to the U.S. Mainland Prisons was utilized as a means to hinder Petitioner's ability to pursue Early Parole Release f[ro]m the U.S. Virgin Islands Parole Board." (Amended Pet. ¶ 20.)

¶ 36    Here, Petitioner essentially alleged that his transfer to stateside prison facilities was due to Respondent's retaliatory actions to hinder Petitioner's ability to seek early parole release,[9] and therefore, the transfer was in violation of his right to seek early parole release under Virgin Islands laws and his right to due process. However, as noted above, the location of Petitioner's confinement does not take away his right to apply for parole, early or otherwise, because it does not affect his ability to seek early parole release. Thus, the fact that Petitioner was transferred to stateside prison facilities in and of itself does not constitute retaliatory actions by Respondent to hinder Petitioner's ability to seek early parole release. As such, the Court finds that Petitioner's factual allegations, even if true, has not set forth a prima facie case regarding his claim that his transfer to stateside prison facilities was due to Respondent's retaliatory actions to hinder

---

[9] The Court already addressed Petitioner's allegation that his transfer to stateside prison facilities was arbitrary in Claim One—to wit, the Court stated that "taking Petitioner's factual allegations as true, Petitioner was not given a written notice of an administrative hearing, an administrative hearing was not held prior to Petitioner's transfer to stateside prison facilities, and none of the applicable procedures required under the Virgin Islands Codes and the Code of U.S. Virgin Islands Rules were followed." Thus, the Court will only address Petitioner's allegation that his transfer to stateside prison facilities was due to Respondent's retaliatory actions to hinder Petitioner's ability to seek early parole release in Claim Four.

Petitioner's ability to seek early parole release in violation of his right to seek early parole release

under Virgin Islands laws and his right to due process.

## CONCLUSION

¶ 37     Based on the foregoing, the Court will deny the outstanding motions, and grant in part and

deny in part Petitioner's Amended Petition. A writ consistent with this Memorandum Opinion will

be entered contemporaneously herewith.

        **DONE this** _____ **day of October 2021.**


**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
     Court Clerk Supervisor

Dated: _____ 10/29/2021

                                    _____
                                    HAROLD W.L. WILLOCKS
                                    **Presiding Judge of the Superior Court**