IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
July 16, 2025 12:05 PM
SX-2017-CV-00319
**TAMARA CHARLES
CLERK OF THE COURT**

**SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| **MERAL SMITH,** | **CASE NO. SX-2017-CV-00319** |
| PETITIONER, | |
| v. | WRIT OF HABEAS CORPUS |
| **WYNNIE TESTMARK, DIRECTOR OF THE VIRGIN ISLANDS BUREAU OF CORRECTIONS,** | |
| RESPONDENT. | |

Cite as: 2025 VI SUPER 22

Appearances:

MERAL SMITH
*Pro Se*
*Petitioner*

IAN S.A. CLEMENT, ESQ.
Assistant Attorney General
Virgin Islands Department of Justice
St. Croix, VI
*For Respondent*

## MEMORANDUM OPINION AND ORDER

### PROCEDURAL POSTURE

¶ 1    **THIS MATTER** is before the Court on a *Writ of Habeas Corpus* (Memorandum Opinion and Order, 2021 VI Super 108U) (hereinafter "Writ") issued on October 29, 2021, the Respondent's *Return* (hereinafter "Return") filed on November 29, 2021, and the Petitioner's Supplemental *Traverse* (hereinafter "Traverse") filed on January 27, 2022.

¶ 2    In the initial Writ in this matter, the Court found that the Petitioner adequately alleged a *prima facie* case for habeas relief with respect to two claims in his *First Amended Petition for Writ of Habeas Corpus* (hereinafter "Petition"), filed on July 29, 2019. The Court accordingly issued the Writ limited to those two claims. The first claim alleged that the Petitioner was deprived of due process when he was transferred to a stateside prison facility without an administrative hearing, in violation of 5 C.V.I.R. § 4503-1 *et seq.* The second claim alleged that the Petitioner's confinement in a stateside facility denied him access to educational and vocational programs, in

violation of 5 V.I.C. § 4503(c). For the reasons set forth herein, the Court will grant the Petition in part and deny it in part.

## BACKGROUND

¶ 3    In 1972, the Petitioner, Meral A. Smith (hereinafter "Smith"), was convicted of the shooting deaths of eight individuals at the Fountain Valley Golf Course in St. Croix and was sentenced to eight consecutive life terms. On August 2, 2001, Smith was transferred to Wallens Ridge State Prison in Big Stone Gap, Virginia, to continue serving his sentence. Following that transfer, Smith filed a petition for a writ of habeas corpus in the Superior Court, challenging the legality of his confinement at Wallens Ridge. Pursuant to an order issued in Case No. SX-2003-CV-00719, Smith was returned to the Golden Grove Adult Correctional Facility ("Golden Grove") for a hearing. On March 8, 2016, he was again transferred—this time from Golden Grove to the Saguaro Correctional Center in Eloy, Arizona. Since filing the present Petition, Smith has been transferred multiple times and is currently incarcerated at the Citrus County Detention Facility (hereinafter "Citrus County") in Lecanto, Florida. Smith alleges that a transfer hearing never occurred prior to the March 8, 2016, transfer, pursuant to 5 C.V.I.R. § 4503-1.

## LEGAL STANDARD

### 1.  When Habeas Corpus Relief is Required

¶ 4    The statutory foundation for habeas corpus relief in the U.S. Virgin Islands is found in 5 V.I.C. § 1301, which provides that "every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." 5 V.I.C. § 1302 outlines the procedural requirements of a petition for a writ of habeas corpus, including the identification of the custodian, place of confinement, and legal grounds for relief. Jurisdiction lies with both the Superior Court and the District Court under 5 V.I.C. § 1303.

¶ 5    The Court issued the Writ finding that the Petitioner had made a *prima facie* showing that grounds existed to entitle him to relief as to two separate claims that were not legally barred. The issuance of the Writ did not award the Petitioner any of the relief sought, but required the Respondent to file their Return, responding to the Petition. "Habeas corpus is warranted only in limited cases where violations of constitutional principles are implicated; it is not a substitute for a direct appeal." *Dowling v. Gov't of the V.I.*, 44 V.I. 256, 259 (V.I. Terr. Ct. 2002) (citations

omitted). In this review, "[P]etitioner bears the burden of proving the facts supporting the petition or establishing grounds entitling him to relief." *Id* (citations omitted). Under V.I. H.C.R. 2(b)(2), "[a] petitioner may be awarded a discharge – or another form of redress, such as a new sentencing hearing – if any of the seven conditions set forth in 5 V.I.C. § 1314 are met, or if relief is warranted to remedy a constitutional or statutory violation."[1]

### 2. No Evidentiary Hearing Required

¶ 6    Although an evidentiary hearing is generally required once a *prima facie* case is established, no hearing is necessary where the parties' filings reveal no factual disputes material to resolution. *See Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 314 (V.I. 2014); V.I. H.C.R. 2(g)(1). In this matter, regarding the Petitioner's due process claim, the Respondent has not contested the material factual allegations of the Petition with respect to the due process violation, and those allegations are thus deemed admitted for purposes of these proceedings under V.I. H.C.R. 2(e). Regarding the Petitioner's second claim, concerning access to educational and vocational programs, the submissions reveal no material factual disputes. Therefore, pursuant to V.I. H.C.R. 2(g)(1), an evidentiary hearing is not required.

### 3. Due Process

¶ 7    Prisoners do not have a right secured by the Revised Organic Act of 1954 to be housed in a correctional institution of their choice. In *Meachum v. Fano*, 427 U.S. 215 (1976), and *Montanye v. Haynes*, 427 U.S. 236 (1976), the United States Supreme "Court held that an intrastate prison transfer does not directly implicate the Due Process Clause of the Fourteenth Amendment." *Olim v. Wakinekona*, 461 U.S. 238, 244 (1983). In *Olim*, the Supreme Court extended prior holdings to interstate transfers. *See id.* at 245 ("Just as an inmate has no justifiable expectation that he will be

---

[1] 5 V.I.C. § 1314 provides:

   If it appears on the return of the writ that the prisoner is in custody by virtue of process from any court or judge or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restriction of section 1313 of this title:

   (1) When the jurisdiction of such court or officer has been exceeded.
   (2) When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge.
   (3) When the process is defective in some matter of substance required by law rendering such process void.
   (4) When the process, though proper in form, has been issued in a case not allowed by law.
   (5) When the person having custody of the prisoner is not the person allowed by law to detain him.
   (6) When the process if not authorized by any order, judgment or decree of any court, nor by any provision of law.
   (7) When a party has been committed on a criminal charge without reasonable or probable cause.

incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State"). In the same year that *Olim* was decided, the United States Supreme Court held in *Hewitt v. Helms*, 459 U.S. 460 (1983) "that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Id.* at 467. The Court also reiterated that "the transfer of a prisoner from one institution to another … [is] unprotected by 'the Due Process Clause in and of itself,' even though the change of facilities involve[s] a significant modification in conditions of confinement…" *Id.* at 468 (quoting *Meachum*, 427 U.S. at 225). But the Court viewed a jurisdiction's decision to "use language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed," *id.* at 471, as a change or departure. Because "the State had gone beyond issuing mere procedural guidelines and had used 'language of an unmistakably mandatory character' … the Court [in *Hewitt*] decided that the State had created a protected liberty interest." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt*, 459 at 471-472). *Sandin* rejected *Hewitt*'s "search for a negative implication from mandatory language in prisoner regulations … [and] return[ed] to the due process principles … correctly established and applied in *Wolff* and *Meachum*." *Id.* at 483.

¶ 8    "*Hewitt* … produced at least two undesirable effects." *Id.* at 482. "First, it create[d] disincentives for States to codify prison management procedures in the interest of uniform treatment." *Id.* "States may avoid creation of 'liberty' interests by having scarcely any regulations, or by conferring standardless discretion on correctional personnel." *Id.* And "[b]y shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481.

¶ 9    "Second, the *Hewitt* approach … led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit for anyone." *Id.* at 482. Although *Sandin* technically did not overrule *Hewitt*, *see id.* at 483 n.5, it did "abandon …*Hewitt*'s methodology…" *Id.* Therefore, the focus of this Court is on the "nature of the deprivation" and not "the language of a particular regulation…" *Id.* at 481.

¶ 10    The Court recognized in *Hewitt* that "a State could create a liberty interest with [the] enactment of regulations governing the administration of state prisons." *Banks v. Jones*, 232 So.3d 963, 967 (Fla. 2017); *see also id.* at 966 ("Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." (quoting *Hewitt*, 459 U.S. at 466)); *accord Martinez v. Golden Grove Corr. Facility*, 757 F. App'x 86, 91 (3d Cir. 2018) ("The Supreme Court has held that 'the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.'…This does not end our inquiry, however, because a state-created liberty interest could still trigger due process protections." (citation omitted)).

¶ 11    The Virgin Islands provides a right to due process for someone who is incarcerated. This Court's *Memorandum Opinion* entered on October 29, 2021, granting Petitioner's Writ held:

> The Code of the U.S. Virgin Islands Rules sets forth specific procedures for the transfer of any prisoner from prison facilities in the Virgin Islands to stateside prison facilities, including but not limited to, requiring "[a] committee of three persons shall be formed to hold an administrative hearing prior to the transfer of any prisoner from prison facilities in the Virgin Islands to stateside prison facilities." [2] The Code of U.S. Virgin Islands Rules also sets forth specific criteria for the selection of inmates to be transferred – to wit, "Selection of inmates to be transferred may be made by the following criteria and for any other good cause as determined by the

---

[2] *Ibid* [o]ther requirements under the Code of U.S. Virgin Islands Rules include: (i) "The committee shall be comprised of the warden or designee acting as chairman, one shift supervisor from the prison correction staff who is familiar with the prisoner and another person who is a member of the staff of the administrator of the prison." 5 C.V.I.R. § 4503-2; (ii) "The prisoner shall be given a written notice of the hearing, at least 24 hours prior to the hearing, which notice shall not only state the time and place of the hearing, but the reasons the transfer is being contemplated. An inmate's request for a postponement of his hearing shall be granted unless good cause exists for refusing the request. However, no postponement shall extend more than three (3) days from the date for which the hearing was originally set." 5 C.V.I.R. § 4503-3; (iii) "A written statement of the facts or circumstances relied upon by the Bureau and upon which it proposes to determine that the inmate should be transferred shall be presented to the inmate simultaneously with the notice of hearing." 5 C.V.I.R. § 4503-4; (iv) "The inmate shall be allowed to call witnesses on his behalf and to present any documentary evidence available to him in an effort to establish that the transfer is unwarranted, unless the director of the Bureau, in writing, concludes for any reason that compliance with the above would be disruptive to the hearing, would cause an undue burden on the institution's administration, would be unduly hazardous to the safety of the institution or that compliance would compromise institutional safety or correctional goals." 5 C.V.I.R. § 4503-5; (v) "In instances in which the inmate is physically or mentally unable to collect and present the evidence necessary for adequate presentation of his case, including those instances in which the inability results from lack of intellectual capacity, the inmate shall be allowed to seek the assistance of a fellow inmate who shall serve as his representative, or if this is deemed not feasible, he shall be afforded adequate substitute aid which maty take the form of either assistance from a staff member or from a sufficiently competent inmate designated by the staff." 5 C.V.I.R. § 4502-6; and (vi) "A record shall be made of the finding of the committee and the evidence relied on to make the findings as well as a statement of the recommendations. The record of the proceedings shall be forwarded to the Director of the Bureau of Corrections. The Director shall inform the prisoner, in writing, of the findings from the hearing and the reasons for the Director's decision." 5 C.V.I.R. § 4503-7.

> Director; to wit: (1) Prisoners who voluntarily request transfer. (2) Inmates in need of medical or psychiatric care. (3) Recommendation by the Courts to transfer the prisoner. (4) Inmate with long-term sentencing. However, this criterion will be valid only so long as the Virgin Islands lacks facilities for extended segregation of long-term prisoners. For this purpose, "long-term" means a sentence of imprisonment of not less than 10 years. (5) A finding by the prison administration that the inmate is a high risk for escaping. (6) A pattern of disruptive action or behavior on the part of the inmate. (7) A finding by the Director that correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general welfare of the Territory." 5 C.V.I.R. § 4503-9.

2021 VI SUPER 108U, ¶ 27. Regulations promulgated by administrative agencies "have the force and effect of law…" 3 V.I.C. § 913; *see also Miller v. People*, 76 V.I. 413, 477 (V.I. 2022) (actions of government agencies "carry the force of law."). These provisions require that, before any transfer occurs, the inmate must be provided written notice of the proposed transfer and afforded a meaningful opportunity to be heard. *See generally* 5 C.V.I.R. § 4503.

### 4. Educational and/or Vocational Program Availability

¶ 12    Virgin Islands law further protects inmates' rights to rehabilitation through 5 V.I.C. § 4503(c), which mandates that no inmate shall be transferred to a facility that lacks educational and/or vocational programs. The statute imposes an affirmative duty on the Virgin Islands Bureau of Corrections to ensure that such programming is available in any receiving institution, recognizing the critical role such opportunities play in inmate rehabilitation and reintegration. While the law does not require that these programs be identical in every facility or tailored to an individual's preferences, it does require the existence of bona fide educational or vocational opportunities. In *Smith v. Stridiron*, the court clarified that the statute does not mandate comparative equivalency of programs but does require that inmates not be transferred to institutions that entirely lack such rehabilitative offerings. *Smith v. Stridiron*, 2008 WL 5632266, at *3 (D.V.I. App. Div. Feb. 27, 2008. "BOC must merely determine that the new facility offers some kind of educational or vocational programs." *Simon v. Mullgrav*, SX-2015-CV-00278, 2018 WL 4562767, at *6 (V.I. Super. 2018) (citation omitted).

### DISCUSSION

### 1. Due Process Claim – Transfer Without a Hearing

¶ 13    In the instant matter, the Petitioner does not have a constitutionally protected liberty interest. *Sandin, Hewitt, Olim,* and *Meachum* foreclose any argument that the Fourteenth

Amendment—or the Revised Organic Act's extension of that Amendment to the Territory—provides inmates with a liberty interest in where they serve their term in incarceration. Although there is no constitutional right to a notice or hearing prior to a prisoner transfer, there is a constitutional violation when a state ignores a state-created liberty interest.[3] *See generally Hewitt v. Helms*, 459 U.S. 460 (1983). The Petitioner asserts that he was deprived of his U.S. Virgin Islands created liberty interests and due process under 5 C.V.I.R. 4503-1 *et. seq.*

¶ 14   Under 5 C.V.I.R. § 4503-1, a pre-transfer hearing is required before an inmate may be transferred to another correctional facility. The regulation mandates that the inmate be given notice and an opportunity to be heard. The hearing also affords the inmate an opportunity to contest the transfer or present mitigating information. The Petitioner alleges that no hearing occurred prior to his transfer to a stateside facility. The Respondent has not disputed this assertion. Accordingly, the Court accepts that no pre-transfer hearing took place. The lack of notice and an opportunity to be heard, as required by 5 C.V.I.R. 4503-1 *et. seq.*, deprived the Petitioner of fundamental fairness and rendered the transfer arbitrary and unlawful, in violation of the Petitioner's state-created interest in a pre-transfer hearing. Accordingly, relief is warranted.

## 2. Lack of Educational and Vocational Programs

¶ 15   The Petitioner also alleged that the institution at which he was detained did not have educational and vocational programming in violation of 5 V.I.C. § 4503(c), which requires that inmates not be transferred to facilities lacking such programs. The statute, however, does not require that the programs be comparable or tailored to an inmate's individual preferences. As held in *Smith v. Stridiron*, "There is no requirement [under 5 V.I.C. § 4503] that the programs be comparable... nor that the Attorney General promulgate rules that ascertain that one institution's programs are more or less effective." *Smith v. Stridiron*, 2008 WL 5632266, at *3 (D.V.I. App. Div. Feb. 27, 2008). Moreover, the Respondent submitted documentation demonstrating that Petitioner has taken over 51 courses at Citrus County, totaling more than 190 hours of coursework and 303 individual lessons. Based on this record, the Court finds that Citrus County does have

---

[3] The Fourteenth Amendment of the U.S. Constitution explicitly prohibits states from depriving any person of life, liberty, or property without due process of law. U.S.C.A. Const. Amend. XIV, § 1. While the USVI is not a state, the Revised Organic Act of 1954 extends similar protections to the territory. Section 3 of the Revised Organic Act provides that, "[n]o law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws." 48 U.S.C.A. § 1561. *See also Balboni v. Ranger American of the V.I., Inc.*, 70 V.I. 1048, 1055 (V.I. 2019).

educational and vocational programming that the Petitioner has had access to and attends. Therefore, this claim lacks merit and does not warrant relief.

## CONCLUSION

¶ 16     The Petitioner was deprived of his due process rights in his transfer to the Citrus County Correctional Center without a transfer hearing in accordance with 5 C.V.I.R. § 4503-1 *et seq*. The record reflects, however, that the Citrus County Correctional Center does have educational and vocational programming in accordance with 5 V.I.C. § 4503(c). Accordingly, the premises having been considered, and the Court being otherwise fully advised, it is hereby

**ORDERED** that the Petitioner's *First Amended Petition for Writ of Habeas Corpus* is **GRANTED** as to the due process claim, and the Virgin Islands Bureau of Corrections must to conduct a new transfer hearing within 60 days, in accordance with 5 C.V.I.R. § 4503-1 *et seq.*, to determine whether the Petitioner's current placement at the Citrus County Detention Facility in Lecanto, Florida is appropriate; and it is further

**ORDERED** that, pursuant to the Petitioner's new transfer hearing, the Virgin Islands Bureau of Corrections must make appropriate adjustments to the Petitioner's placement, including transfer back to the John A. Bell Correctional Facility, if appropriate; and it is further

**ORDERED** that the Petitioner's *First Amended Petition for Habeas Corpus* is **DENIED** as to the claim that Petitioner's confinement in a stateside prison facility is without access to educational and/or vocational programs; and it is further

**ORDERED** that this matter is **CLOSED;** and it is finally

**ORDERED** that a copy of this Order be served upon the Petitioner, Meral Smith, and upon Ian S.A. Clement, Esq.

**DONE** and **SO ORDERED** this 14th day of July, 2025.

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

By: _____
                Court Clerk II

Dated: 7/15/2025

_____
**ERNEST E. MORRIS, JR.**
Superior Court Judge